[Civ. No. 5993. Third Appellate District.—May 24, 1938.]

PAULINE STARKE WHITE, Respondent, v. JACK WHITE et al., Appellants.

H. A. Goldman and Thomas C. Ridgway for Appellants.

I. B. Kornblum and Spencer Austrian for Respondent.

PULLEN, P. J.—Pauline White and Jack White were married in 1927, and lived together as husband and wife until 1931, when an action for divorce was instituted by Pauline White, respondent herein, resulting in an interlocutory decree of divorce. At that time a property settlement agreement was entered into between the parties, but later this action was commenced by respondent seeking to set aside this agreement, claiming that the same did not give her a fair share of the community property.

Appellant filed an answer admitting that the property settlement agreement was unfair, claiming, however, that it was unfair to him in that it gave to respondent more than her share of the community property, and alleging that his signature was secured thereto by coercion.

A motion for judgment on the pleadings was granted upon the ground that the parties to the action sought the same re-

lief, and the property settlement was set aside and a receiver was appointed to take charge of the community property. At the same time the court also appointed a special master to take evidence as to what was the community property at the time of the divorce, and to recommend an equal division thereof.

At the time of the divorce appellant White contended that the only community property in existence consisted of cash in the bank, wages due respondent from a former employer, and certain insurance policies in the hands of appellant. However, the court awarded a judgment in favor of respondent and against appellant for the sum of $9,135.75 with interest. This amount the court determined from the following facts:

First: A few days prior to the marriage appellant purchased for his prospective wife a diamond engagement ring and a wedding ring upon a written contract of purchase, under the terms of which he agreed to pay for the jewelry in monthly installments. These payments were then made by him after his marriage out of his salary. Appellant attempted to charge these payments against the community but the court held these payments were made from his separate estate.

Second: During the marriage each of the parties supported their respective parents, appellant giving his parents on the average of $75 per week, aggregating over a period of the married life of the parties in excess of $14,000. These payments likewise were held to be chargeable against appellant's separate property.

Third: During marriage appellant drew in excess of 200 checks to cash, ranging in amounts from $1 to $500. No explanation satisfactory to the court was made as to the uses of these amounts.

Fourth: Appellant withdrew from his bank account by countercheck after the commencement of the divorce action $1650. This was held to be community property.

Neither party kept complete books and apparently the special master had considerable difficulty in determining the respective property rights of the parties. It did appear that appellant had the control of community funds and comingled the community funds with his separate estate.

It also appears both parties were employed in the picture industry, and during the marriage each was in receipt of

considerable income, approximately $500,000 for the four years of marriage. At the time of the property settlement, however, all plaintiff had was a piece of residence property acquired prior to marriage and certain household furnishings, jewelry, an automobile, a small amount of cash in the bank, and some $2,000 owing plaintiff for services as a picture actress during the existence of the community. The only property accounted for by defendant at the date of the divorce was some seven parcels of real property, largely encumbered and standing of record in the names of certain of his relatives; certain household furnishings, an automobile and a small amount of cash in the bank.

It appeared that appellant White had expended considerable sums which he had used in the development of his separate property, but during the hearing respondent elected to waive any claim she might have to the realty itself as community property, and demanded that appellant return to the community for division all community funds which he had thus invested in his separate property.

Counsel for defendant contends that the limit of the court's jurisdiction in this action is to decree what interest, if any, plaintiff has in those tangible items of property remaining in defendant's hands or under his control at the time of the divorce, and that the court had no jurisdiction to enter a personal judgment in favor of plaintiff for monies which the accounting showed were disbursed through his hands, regardless of the fact that no satisfactory accounting has been made by him of such funds.

The trial court held, and we think correctly, that it had jurisdiction to render a personal judgment in favor of one party against the other for such amount as was disbursed by the other party from the community funds and not satisfactorily accounted for. The referee cited instances in which it was apparent not only to him but it was also later obvious to the court that defendant was evasive and apparently attempting to mislead the court. For example appellant filed an affidavit at the time of the divorce proceedings in regard to his financial status in which he stated he had no money, but the record disclosed that he had withdrawn $7,000 in cash from his bank and delivered the same to his mother. When interrogated upon this item, defendant's mother stated that she had received the money from the defendant in trust

for him and that she had then returned it to him, and that it was not in repayment of a loan as claimed by appellant and that he did not owe her any money at the time. Defendant, upon being interrogated upon this point, recalled withdrawing the $7,000 and stated that he had spent it but could not recall in what manner. Also it appears that defendant set forth in his affidavit previous to the divorce action, relating to his financial condition that he had on deposit $1650, but a few days later he withdrew this amount from his bank. Other instances appeared where defendant claimed payments for certain community expenses but on cross-examination it developed they had not been expended for the community nor in payment of the items claimed. Upon such testimony the referee reached the conclusion that defendant had deliberately misstated the facts. It also appeared that at one time all the records of both parties, such as canceled checks, bank check stubs, receipted bills, etc., were in a container at the residence of the parties, but after these parties separated these records were in the possession of defendant, and were moved by him from place to place, but at the hearing before the referee a number of these records were missing, particularly a number of the checks claimed to have been drawn for the community benefit were missing, while the checks to named payees during the same period were produced.

 Where the handling of the community funds is entrusted by law to the husband, a certain amount of precaution devolves upon him to keep an approximately accurate account of their disbursements and to keep segregated the community and the separate funds of the parties or to take the legal consequences of being unable satisfactorily to account therefor.

 The referee found that after considering all of the checks produced at the examination, and a study of the books and accounts of appellant there was still a large sum not accounted for, for which defendant had not satisfactorily accounted.

The findings of the referee are in accordance with the evidence, which findings were later adopted by the trial court. Upon appeal from the judgment entered thereon appellant, Jack White, contends that an action to divide the community property affects only property actually in existence at the termination of the community. It is apparently the con-

clusion of the trial court that the money still remained under the control and in the possession of White or his associates at the time of the entry of the decree, and had not been actually expended.

The bookkeeper of White testified that a black book in which she kept a record of all the disbursements of White, and which was a part of the office records, was not among the exhibits before the referee. Another witness testified that he helped White remove the office files from the home of plaintiff and defendant and took them to the home of the parents of White, where they remained until White removed them. Upon such testimony a presumption arose that evidence unlawfully suppressed would be adverse if produced. As authority for the rendering of a personal judgment for community funds against the husband in a separate suit, we may rely upon *Provost* v. *Provost,* 102 Cal. App. 775 [283 Pac. 842]; *Van Camp* v. *Van Camp,* 53 Cal. App. 17 [199 Pac. 885]; *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 Pac. 360], which supports such an order.

In regard to the comingling of the community and separate funds in his attempt to improve his separate estate and to offset community monies, appellant attempted to charge to the community all items actually expended by him relying upon the rule that the expenditure of community funds by the husband is not subject to question. This is illustrated by his gift of money to his parents from the comingled funds totaling over $14,000. The trial court held that where the husband has a large separate estate as well as community funds, gifts made to his parents out of such comingled funds will be presumed to have been from the appellant's separately owned property and not from the community. Likewise in regard to the ring purchased before the marriage which he gave to respondent, the purchase price of which, however, was paid by appellant after marriage, the trial court held, and we think correctly, that when appellant purchased the ring before marriage the ring became his separate property and he was obligated to pay for it out of his separate property, and his gift of the ring to respondent constituted a gift as his separate property regardless of the subsequent marriage of the parties.

Upon the setting aside of the property settlement the trial court entered what it termed was an interlocutory decree

directing the appointment of a special master to determine the facts and providing that after the filing of the report by the special master a final judgment be entered.

It is the contention of appellant that the interlocutory decree constituted the final judgment except perhaps the taking of an inventory of the property found by the master to belong to the parties, and that the time for an appeal has expired. An examination, however, of the interlocutory judgment reveals that the court retained jurisdiction of the case for the purpose of hearing the report of the special master to grant such relief as might be necessary to a complete disposition of the action. It appears evident from the order that it was the intention of the court to reserve its decision dividing the community property until the master had heard all the evidence and made a report showing the property to be divided, as well as the transactions between the parties, the location of the community assets and the recommendation as to what constituted a fair and equitable division.

While there is some conflict of authority on the question as to whether a decree which settled the basic interest between the parties adjudging the complainant's right to an accounting and referring the finding of the items of the account to the master is an appealable order, we are satisfied from an examination of the authorities that the rule adopted by the courts of this state is based upon the desirability of subjecting the parties to but one appeal at the termination of the entire controversy between them. (*Gunder* v. *Gunder*, 208 Cal. 559 [282 Pac. 794] ; *Doudell* v. *Shoo*, 159 Cal. 448 [114 Pac. 579] ; *Gianelli* v. *Briscoe*, 40 Cal. App. 532 [181 Pac. 105] ; Bancroft's Code Practice and Remedies, p. 8329; *Pomper* v. *Superior Court*, 191 Cal. 494 [216 Pac. 577] ; *Middleton* v. *Finney*, 214 Cal. 523 [6 Pac. (2d) 938].)

Appellant also claims that respondent did not seek in her complaint to set aside any transfer made by the husband nor to seek a return of any gift, or ask for any accounting of any funds belonging to respondent. However, a reading of the complaint shows that not only was a recovery sought against defendant White but that in addition thereto the court was requested to set aside the transfer of the community property by White to other defendants, it being alleged that defendants other than appellant White had taken certain property belonging to the community. The prayer of the

complaint also asked that it be adjudged that the transfers to defendants be declared fraudulent, and that. the court make such division of the community property as may be just, and direct the payment thereof to plaintiff, and asked that a receiver be appointed and that defendants be required to account for and transfer the same to the receiver.

Appellant also claims that neither the separate property of the husband nor wife can be charged with any community rights and that the courts have no jurisdiction to apportion or to set aside to either party any part of the other's separate property. With this respondent has no quarrel, but contends that where appellant has been found to have community property in his possession which he fails or refuses to disclose, a personal judgment against him for one-half of the amount of such community funds is not a division of a separate estate, but merely a division of the community funds which the court has found to be in existence but withheld.

We believe that we have answered the various points urged. It is our opinion that the trial court correctly decided this rather confused matter.

The judgment should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 23, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 22, 1938.