[S. F. No. 17665.　In Bank.　Nov. 19, 1948.]

BARBARA WILSON, Respondent, v. FRANCIS A. WILSON, Appellant.

A. B. Dunne, Dunne & Dunne and R. Mitchell S. Boyd for Appellant.

Hallinan, MacInnis & Zamloch and James Martin MacInnis for Respondent.

SCHAUER, J.—This is an appeal from an order* that defendant pay certain "community debts" incurred by plaintiff, his former wife, during the marriage of the parties, and from an order* awarding attorneys' fees to plaintiff's counsel.

In 1945, plaintiff Barbara Wilson obtained an interlocutory decree of divorce from defendant. In the divorce action the trial court (in its findings of fact and conclusions of law) determined, among other things, that "At the time of the filing of the complaint for divorce herein the plaintiff and defendant were indebted for certain debts of the community amounting to the sum of $4,829.00, which . . . both parties are liable upon; . . . all of said obligations are obli-

---

*Denominated a "Judgment" by the trial court and in the notice of appeal.

gations of the community and should be properly paid by the defendant . . . [A] reasonable distribution of the community property . . . is as follows: . . . [Among other things, defendant] should be required to pay the community bills amounting to the said sum of $4,829.00 . . . and to hold the plaintiff harmless from any obligation to pay the same or from any expense to be incurred by her in defending any attempt by any creditor of the community to collect said amount.'' The decree required, among other things, that defendant ''pay and discharge all bills of the parties contracted prior to the filing of the action herein, which the Court finds to amount to the sum of $4,829.00.'' On appeal the decree was modified in respects not here material and affirmed as so modified. (*Wilson* v. *Wilson* (1946), 76 Cal. App.2d 119 [172 P.2d 568].) With reference to the above quoted portion of the decree the District Court of Appeal said (p. 128 of 76 Cal.App.2d), ''Defendant does not contend that he is not liable for the bills incurred by the parties before the date fixed in the findings, nor does he urge that the trial court did not have the power to make an order requiring him to pay such bills. The sole point urged by him as to these bills is that there is no evidence in the record as to the amount of such bills, to whom they are owed, or their nature.

''It is true that the list of such bills, although discussed in open court, was not formally introduced into evidence, but this failure to introduce such a list does not require a reversal or modification. The defendant can suffer no injury because of this fact. As between the husband and wife the court determined that the wife should be held harmless for such bills not to exceed $4,829. Before the defendant can be held liable on these bills so far as the wife is concerned, she must show that the debts were incurred prior to January 19, 1942 [the date of the filing of the action], and that the total amount does not exceed $4,829. If disputes arise between the parties in the future over whether a particular bill was a community bill, and whether it was incurred prior to the date the action was filed, such disputes may be easily determined by the trial court.''

This holding of the District Court of Appeal—that, although there was insufficient evidence in the record to support the judgment insofar as it required defendant to pay the debts (since the debts themselves were not proven), such judgment could be affirmed and evidence to support it could be subsequently introduced, but that it could be enforced

against defendant only to the extent that subsequently introduced evidence might support it—was not attacked by petition for rehearing or petition for hearing by the Supreme Court; hence, it has become final, is law of the case, and cannot now be disturbed. The effect of such holding is to make the interlocutory decree of divorce interlocutory also in the technical sense insofar as the order for payment of community debts is concerned; it determines that defendant must pay community debts not exceeding the amount fixed but requires further action to determine what particular bills of that class shall be paid.

After the going down of the remittitur plaintiff, apparently in an effort to comply with the requirements of the opinion, obtained hearing on an order to show cause. The trial court found that on January 19, 1942, plaintiff and defendant were indebted to named persons and firms in stated amounts (totalling slightly less than $4,829) "for certain debts of the community . . . Such debts were incurred by said Barbara Wilson during the year 1941 and prior to January 19, 1942, and are community bills." As above stated, defendant appeals from the new "judgment" or order that he pay such debts and from a "judgment" or order awarding plaintiff's counsel $500 as attorneys' fees. Defendant contends that the finding that the particular obligations in issue are "community debts" is erroneous, that in any event he is not liable therefor because the statute of limitations has run against such obligations and that the trial court was without power to award attorneys' fees. We have concluded that none of these contentions can be sustained.

The debts which defendant was ordered to pay were incurred by plaintiff wife during a period of 12½ months immediately before she commenced this action. During such time plaintiff and defendant were living apart. Defendant urges that the obligations are not "community debts," as the trial court found, because the phrase "community debts," means "debts incurred by the husband and wife, living together as . . . a community." He points out that the phrase is not defined by statute or decision in this state and that it has been said to be "not appropriate to the California system. (Cal.Jur.Supp., vol. 3, p. 666, sec. 147.)" (*Grolemund* v. *Cafferata* (1941), 17 Cal.2d 679, 688 [111 P.2d 641].) But, he says, when the courts of this state have used the expression "community debts" in connection with our community property system (see *Hulsman* v. *Ireland* (1928),

205 Cal. 345, 349-350 [270 P. 948]; *Bank of America etc. Assn.* v. *Mantz* (1935), 4 Cal.2d 322, 324, 326 [49 P.2d 279]; *Farmers Exch. Nat. Bank* v. *Drew* (1920), 48 Cal.App. 442, 447, 451 [192 P. 105]; *Deacon* v. *Deacon* (1929), 101 Cal. App. 195, 202 [281 P. 533]; *North British etc. Ins. Co.* v. *Ingalls* (1930), 109 Cal.App. 147, 156 [292 P. 678]), they have done so in the sense for which he contends. We think it unnecessary to undertake to enunciate a strict legal definition of "community debts"; the question here, as we view it, seems to be more one of fact, or construction of language, than one of law. The words appear to have been used in this proceeding, not as "words of art," but simply in general reference to the type of obligations which the trial court, when it rendered the interlocutory decree, found that defendant should pay *in order to accomplish a just division of the community property.* There is evidence that the obligations in question were of such type.

As to the period during which the questioned obligations were incurred plaintiff testified, "during the time of the separation and prior to the filing of the divorce, Mr. Wilson did not give me any allowance, neither for food nor maintenance of any sort. He had, prior to that time, given me $400 for spending money a month . . . [but during the separation] Mr. Wilson had made deductions for the bills he was supposed to have paid, and which he had not. He would leave me with an allowance of ten cents or a dollar a month." The greater part of the obligations (in amount approximately three-fourths of the total) were incurred on account of purchases of clothing; they include also sums borrowed for the purchase of transportation and food and charges for eyeglasses, dental services, flowers and household repairs. Indicating that the trial court gave consideration to the problem of whether the debts ordered paid were "community debts" within the meaning of the interlocutory decree, is the fact that it considered evidence of other obligations (for artist's supplies purchased by plaintiff for use in her profession) and found that they were not "community debts."

Defendant complains that the bills for clothing are "extravagantly large" and "show plainly that, after separation from her husband and with her contemplated action for divorce in mind, plaintiff was 'stocking up' her wardrobe as fully as possible before filing that action for divorce." Whether the purchases were extravagant or whether they were made in good faith and in accord with the standard of living of plain-

tiff when she resided with defendant, was a question for the trial court and, while the record could well sustain a substantially different judgment, this court cannot say that the conclusion reached by the trial court is wholly unsupported.

As stated above, defendant contends that he need not pay the bills because of the running of the statute of limitations. This contention is based upon language of the trial court, in its conclusions of law made at the time of the interlocutory decree, that the defendant should "hold the plaintiff harmless from any obligation to pay [the described community debts] . . . or from any expense to be incurred by her in defending any attempt by any creditor of the community to collect said amount" and the statement in the opinion of the District Court of Appeal (*Wilson* v. *Wilson* (1946), *supra,* p. 128 of 76 Cal.App.2d) that "the wife should be held harmless for such bills not to exceed $4,829." Defendant urges that "If demand or suit be made against her, then and then only may she call upon Wilson to 'hold her harmless' from loss"; that, should any creditor bring suit upon the debt created by plaintiff, the obligation to hold plaintiff harmless will be fulfilled by defendant's raising on her behalf the defense of the statute of limitations. This contention, like others made by defendant, also raises a question of construction of the judgment and orders made. The extent of defendant's adjudicated obligation is to be ascertained by consideration of all the findings, judgments and orders herein, not of isolated phrases which are used in the conclusions of the trial court and in the opinion of the District Court of Appeal. While some or all of the debts upon which the presently disputed order is based may have run beyond the appropriate limitation period before such order was made (July 18, 1947) and some may have been prima facie barred even before the interlocutory judgment was entered (April 4, 1945), it appears that all had been incurred within some 13 months of the date the action was filed. The findings of the court in respect to the division of the community assets and the payment of "community debts" specifically relate those debts to "the time of the filing of the complaint for divorce." The original judgment of the trial court required defendant to "pay and discharge . . . community debts"; notwithstanding the hereinabove quoted language of the opinion of the District Court of Appeal, by its judgment it affirmed that judgment of the trial court. By virtue of the order of the District Court of Appeal and the proceedings which

resulted in the orders from which defendant now appeals, the amounts of such debts and the creditors to whom they are owed, have been determined. The fact that the causes of action of the creditors may now be barred has not discharged defendant's adjudicated obligation to plaintiff. The vitality of that obligation now depends, not on enforceability of the debts as against a possible plea of the limitation statute in some action which might now be commenced by the creditors, but on the judgment and orders of the courts in this proceeding. While the money must be applied solely to payment of the proven debts the fact that a limitation statute might now be a defense to an action by the creditors on those debts does not permit defendant to set up the statute on the debts as a defense to his adjudicated obligation to plaintiff. During marriage the husband has the management and control of the community property (Civ. Code, §§ 172, 172a) and could ordinarily advance any legal defense to an action involving the community interests. But on dissolution of the marriage the community is terminated and in a case such as this, where the marriage is dissolved by a divorce on the ground of extreme cruelty, the court can apportion and distribute the community property between the parties in such proportions as it deems just in the circumstances (Civ. Code, § 146). Here, the defendant is in no worse position, certainly, than that in which he would have been if $4,829 had been awarded to plaintiff, either with a direction to her to pay the debts, or simply to take as her separate estate.

The trial court awarded fees to plaintiff's counsel "for services performed between the filing [on November 30, 1946] of the remittitur from the [previous] appeal . . . up to and including June 1, 1947." The allowance of attorneys' fees in a divorce action is authorized, by statute, only "During the pendency of . . . such action" (Civ. Code, § 137) and only where such allowance is necessary to enable the future prosecution or defense of the action (see cases collected in 1 Cal.Jur., Alimony, § 51). As stated in *White* v. *White* (1890), 86 Cal. 212, 214-215 [24 P. 1030], relied upon by defendant, "the principle which runs through all the cases, seems to be that the wife in a divorce case is entitled to such allowance out of the community estate as may be necessary to enable her to maintain her rights. Her husband, who has control of the community estate, is presumed to be using it in the litigation so far as his necessities require, and she is entitled to an equal privilege. Therefore,

if she needs money to enable her to secure legal advice and assistance, she should have a suitable allowance; but if she does not need it,—that is, if she has secured attorneys by an agreement for a contingent fee,—then no allowance should be made."

The order that plaintiff's counsel recover $500 as attorneys' fees was not made until after the services herein had been performed. That allowance was proper only if, before the services were rendered, there had been an application by plaintiff for such fees and a stipulation by defendant or an order of the court that the fixing of the amount thereof could be postponed until the services had been rendered (see cases collected in 1 Cal.Jur., Alimony, § 52). In this connection the record shows the following colloquy, which took place on the last day of the hearing on the order to show cause:

"Mr. MacInnis [plaintiff's counsel]: . . . Now, there is one other matter that I would like to address to your Honor, and that is the matter upon which your Honor has already retained jurisdiction. That is the matter of counsel fees for these proceedings we have had, following the determination upon appeal . . .

"The Court . . . (To Mr. MacInnis): How much do you think I should allow you for your services? How much did I allow you before?

"Mr. MacInnis: It was only for the past services, ending with the termination of the appeal. Now, the application, upon which you retained jurisdiction, is for the services since the remittitur from the Appellate Court came down. Now, we have been out here many times . . . We were before Judge Harris.

"Mr. Boyd [defendant's counsel]: Those matters have been concluded. We paid you up to December 5, 1946. That is while the matter was still on appeal, up to the date of the final decree.

"Mr. MacInnis: The order covers it, whatever the order says.

"The Court: He is entitled to pay for this work now being done.

"Mr. Boyd: These past hearings? I dispute that. There has been no application filed with the Court prior to the bringing of these actions, for attorney's fees. There has been an attempt to seek fees for work that has already been done. No application has been filed.

"MR. MACINNIS: That is not true. The application is right here in the file."

Defendant's counsel made no further objection to allowance of fees on the ground that no application therefor had been made until after the services were rendered; he went on to argue the contention, hereinafter discussed, that fees could not be allowed because the action was no longer "pending."

From this we may assume that it had been determined, prior to the hearing on the order to show cause, that an allowance of attorneys' fees was necessary to enable plaintiff to maintain this proceeding and that the fixing of the amount of such fees had been postponed until conclusion of the hearing. Defendant-appellant has not attempted, on this appeal, to make a contrary showing by producing the file or other evidence.

█ As above stated, it is defendant's position that the trial court was without power to award attorneys' fees to plaintiff's counsel because the divorce action was no longer pending at the time of such award. The final decree of divorce was entered on December 5, 1946, and neither party has appealed therefrom. However, the trial court's power to award suit money does not cease merely because a final decree of divorce has been entered and no appeal therefrom has been taken within the time prescribed by law. Such an allowance may be made after the decree has become final, to enable a former wife to force payment of alimony ordered (*Parker* v. *Parker* (1937), 22 Cal.App.2d 139, 142 [70 P.2d 1003]) or to resist her former husband's application to have an allowance of alimony modified or terminated (*Lamborn* v. *Lamborn* (1923), 190 Cal. 794, 795 [214 P. 862]; *Moore* v. *Gosbey* (1933), 130 Cal.App. 70, 73 [19 P.2d 995]; *Gebhardt* v. *Gebhardt* (1945), 69 Cal.App.2d 723, 728 [160 P.2d 177]).

There is no essential difference in principle between an allowance of attorneys' fees in such cases and an allowance in a case such as this, where the wife seeks to compel compliance with an order made to accomplish a just division of the property of the parties. *McClure* v. *McClure* (1935), 4 Cal.2d 356, 362 [49 P.2d 584, 100 A.L.R. 1257], relied upon by defendant, does not, as do the Lamborn and kindred cases, present a situation materially similar to that now before us. In the McClure case it was held that where a husband has been permanently and finally relieved of his obligation to pay alimony the trial court is not authorized, on subsequent application of the wife for renewal of alimony payments, to allow

her attorneys' fees. The situation here is analogous to that in the Parker, Lamborn, Moore and Gebhardt cases, rather than to that in the McClure case.

For the reasons above stated, the orders appealed from are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.