[Civ. Nos. 19966, 20088.   Second Dist., Div. One.   June 1, 1954.]

JOAN HIBBS CURRIN, Plaintiff and Appellant, v. RALPH HICKS CURRIN, Defendant and Appellant.

Albert D. White and Roy J. Brown for Plaintiff and Appellant.

Edwin C. Iliff and Lane & Lane for Defendant and Appellant.

WHITE, P. J.—This action was commenced when plaintiff wife filed a complaint for separate maintenance grounded on the charge of extreme cruelty. Subsequently, she filed a second amended complaint wherein she sought a divorce or, "in the event that the court should determine that plaintiff is not entitled to a divorce, that plaintiff may live separate and apart from defendant."

Defendant husband filed an answer in which he denied the allegations of extreme cruelty set forth in the plaintiff's amended complaint. He also filed a cross-complaint alleging that plaintiff was guilty of extreme cruelty toward him, and had committed adultery with one Dr. Gregory Hoskins, who was named as corespondent. Plaintiff filed her answer to said cross-complaint as did the corespondent. The latter

denied committing adultery with plaintiff, appeared and defended in propria persona at the trial of the action.

Both plaintiff and defendant prayed for the custody of the minor child of the parties, Rodney Alan Currin, born March 3, 1950.

(For purposes of convenience plaintiff and cross-defendant will hereinafter be referred to as plaintiff and defendant, and cross-complainant as defendant.)

The record reveals that plaintiff and defendant were married July 3, 1947, at Long Beach, California. Defendant is a lieutenant-colonel in the United State Marine Corps and plaintiff is the daughter of a United States Navy captain, retired. The parties separated on December 24, 1951, at which time the minor son was approximately 1 year and 8 months of age. The boy was in the custody of plaintiff from the date of his birth until he was 2 years old, when, on or about March 1, 1952, defendant appeared at plaintiff's apartment in Long Beach where she and the minor son were living, and asked to take the boy for a ride. Plaintiff consented and defendant left with the child and the latter has never been returned to his mother. On the occasion last mentioned defendant took the child across the country and left him in the custody of the former's brother and sister-in-law in North Carolina, where the child was at the time of the trial. Plaintiff repeatedly urged defendant to return the child to her but such requests were ignored. After leaving the child in North Carolina defendant returned to California.

Following trial before the court judgment was entered denying plaintiff a divorce on her complaint and awarding defendant a divorce upon the ground of extreme cruelty as alleged in his cross-complaint. Custody of the minor child was awarded to the defendant, the court finding, "that plaintiff and cross-defendant is not a fit and proper person to have the care, custody and control of the minor child of the parties hereto and that defendant and cross-complainant is a fit and proper person to have the care, custody and control of the minor child of the parties hereto, and the same is hereby granted to him; that plaintiff and cross-defendant shall have the right of reasonable visitation to see child at all reasonable times and places, and said plaintiff and cross-defendant shall have the right to have said child visit her at her place of residence within the territorial limits of the United States in the months of June, July and August, commencing after the end of the school term in June of each

year, and defendant and cross-complainant shall pay the cost of transportation and maintenance of said child to and from the residence of plaintiff on each of said occasions, and pay plaintiff and cross-defendant, during said period of visitation, for child support, a sum of money at the rate of Seventy-five ($75.00) Dollars per month; that until further order of Court said minor child shall remain in the State of North Carolina with the brother and sister-in-law of defendant, Lucius Currin, Jr. and Pauline Currin, at Oxford, North Carolina, except for that period of time said child is visiting plaintiff and cross-defendant in the months of June, July and August at the residence of plaintiff and cross-defendant; that said persons, to wit: Lucius Currin, Jr. and Pauline Currin, are fit and proper persons to have the physical care and custody of said minor child."

Plaintiff appeals from that portion of the judgment awarding to defendant the care, custody and control of the minor child of the parties, and also from an order subsequently made denying her an award of costs with which to prosecute her appeal.

Defendant appeals from that part of the judgment wherein plaintiff was awarded the right to have said child visit her at her place of residence within the territorial limits of the United States in the months of June, July and August, commencing after the end of the school term in June of each year; from that part of the judgment wherein the defendant was ordered to pay the cost of transportation of said child to and from the residence of the plaintiff for each of said visits, and to pay the plaintiff, during said periods of visitation, for child support, a sum of money at the rate of $75 per month. Defendant also challenges as unsupported by evidence the court's finding that he was a resident of the State of California at the time this action was commenced. This contention is advanced in support of defendant's claim that the court was without jurisdiction over the minor child of the parties.

It was stipulated that both appeals be consolidated and that, "all briefs on file may be considered as pertaining to all appeals."

The court made two sets of findings, one based on plaintiff's second amended complaint and the answer thereto, while the other applied to defendant's cross-complaint and the answer to it.

Before proceeding to a discussion of the contentions advanced on appeal by the respective parties, we shall set forth as much of both sets of findings as appear material to a disposition of all the grounds urged on the appeals of both parties.

The court found,

"V. That the defendant is a fit and proper person to have the care, custody and control of the minor child of the parties hereto, and that the plaintiff is not a fit and proper person to have the care, custody and control of the minor child of the parties hereto.

"VI. That it is not true that the defendant inflicted upon plaintiff a course of grievous mental or physical suffering, and said defendant is not guilty thereof.

"VII. That the defendant was, at the time of the commencement of this action, and now is, a resident of the County of San Diego, State of California."

.    .    .    .    .    .    .    .    .    .    .    .    .

"VI. That on or about March 1, 1952, and prior to the commencement of this action, the minor child of the parties hereto was removed from the State of California, the legal residence and domicile of the defendant, to the State of North Carolina, and that at all times thereafter, up to and including the time of the trial of this action, said child was residing in the State of North Carolina, in the physical care of the brother of the defendant, Lucius Currin, Jr. and his wife, Pauline Currin, in and at Oxford, North Carolina, which persons now are, and at all times heretofore have been in all respects fit and proper persons, and whose home is a fit and proper environment for the care, raising and training of said child, and conducive to its best interests."

.    .    .    .    .    .    .    .    .    .    .    .    .

"VIII. That since the marriage of the parties hereto, and prior to the filing of the cross-complaint herein, plaintiff and cross-defendant has inflicted upon defendant and cross-complainant a course of great and grievous extreme mental cruelty, all without just cause, reason or provocation therefor, and in the following particulars, to wit:

"(a) On numerous occasions from February, 1951, up to the time of the separation of the parties hereto on December 24, 1951, plaintiff socially associated with, had engagements with, and received as a visitor in her home, one Gregory Hoskins, the co-respondent herein, without the consent, knowledge, connivance or procurement of defendant.

"(b) That on or about April 14, 1951 the said co-respondent Gregory Hoskins was invited to and into the home of the plaintiff, and either at the time of his admission therein by plaintiff, or shortly thereafter, was in an intoxicated condition, and plaintiff permitted and allowed the said co-respondent Gregory Hoskins to occupy her bedroom for some two hours, attired only in his underwear and concealed the fact of the presence of said Gregory Hoskins in said home from the defendant, at a time when the defendant arrived thereat during the course of said visit of said Gregory Hoskins.

"(c) That on at least two occasions in the month of January, 1952, plaintiff invited and permitted said Gregory Hoskins to remain over night in her apartment on Roycroft Avenue, in the City of Long Beach, State of California, there then and there being no other person present except the minor child of the parties hereto.

"(d) That on or about January 14, 1925 plaintiff occupied the same room with co-respondent Gregory Hoskins in the Ramona Motel, at Hemet, California throughout the night, there then and there being no other person or persons present, at a time when plaintiff was living in the City of Long Beach, State of California, and had left the minor child of the parties hereto in the care of her mother, Renee Hibbs.

"(e) That on or about January 23, 1952 the plaintiff stayed from approximately 1:00 A.M. until approximately 9:00 A.M. with the said Gregory Hoskins in his apartment on Shaw Avenue, in the City of Long Beach, State of California, there being no other person or persons present.

"(f) That on or about January 15, 1952 the plaintiff and co-respondent Gregory Hoskins occupied one room together throughout the night, there being no other person or persons present, at the Mountain Inn, Idyllwild, California.

"(g) That on or about April 10, 11 and 12, 1952 plaintiff and co-respondent Gregory Hoskins jointly occupied a room at the Holiday Villa in Palm Springs, California, alone and not in conjunction with any other person or persons.

"That all of the conduct of the plaintiff hereinabove stated, except that referred to in Section (g) of Paragraph VIII, occurred prior to the filing of the complaint herein, without the then knowledge of defendant, and the plaintiff deliberately and intentionally concealed the same from defendant, the defendant discovering the same by means and methods other than through the plaintiff or the co-respondent."

### Plaintiff's Appeal

■ Plaintiff urges that the foregoing findings "are totally insufficient to support the finding of unfitness." That there is nothing in any of the findings to show how or in what manner such conduct on her part with the corespondent was brought to the attention of the then 1½ or 2-year-old child so as to have affected him or his morals adversely. With this contention we cannot agree. The problem presented to the trial court called for a determination of whether the proven conduct of plaintiff, consisting as it did of indiscriminate, profligate and shameless association with the corespondent, even after commencement of the divorce action, was such as to endanger the child's welfare, were the latter to be placed in the mother's custody. As was cogently stated in his "Memorandum of Judgment" by the trial judge, "In making this decision, the Court believes, from the evidence, that the plaintiff and cross-defendant is good to the child and perhaps a good mother, but under the present environment, and romantic intentions of the plaintiff and cross-defendant, which are so obvious, the Court believes, *for the present, at least,* the custody of the minor child should be awarded to the cross-complainant . . ." (Emphasis added.)

Should plaintiff change her moral concepts, which not only included her association with the corespondent, but the use of vile and filthy language toward defendant and plaintiff's brother, then she can apply to the court for modification of the custody order.

It is also noteworthy that on several occasions throughout the trial both plaintiff and the corespondent refused to testify on the ground that their answers to interrogatories concerning their claimed adulteries, cohabitation at various motels and in their respective homes, might tend to incriminate them. While the plaintiff had the right to invoke the constitutional guaranty against self-incrimination she did not have a plenary right to the custody of the child when she refused to answer questions pertaining to her unfaithfulness to her marriage vows and her fitness to have the custody of the child. We are not here confronted with a situation of one immoral act but with a continuous course of unmoral, if not immoral conduct. To be entrusted with the rearing of children a mother should be possessed of such character and conduct that by the force of her example she can train them in the paths of morality, righteousness and rectitude.

Furthermore, we are here confronted with a question of the discretion vested in the trial court. At the trial both parties appeared as witnesses and were examined and cross-examined at some length. In decisions too numerous to mention, it has been said that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. And this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. We find no such showing here.

Finally, plaintiff asserts abuse of discretion upon the part of the trial court in denying her application for attorneys fees and costs on appeal. ▉ The record reflects that a full and complete hearing was had upon said application and it is unnecessary to here set forth in detail the testimony adduced at such hearing. Suffice it to say that the financial worth of both parties was inquired into as well as the amounts theretofore paid by defendant to plaintiff for attorneys fees and costs. At the conclusion of the hearing, the court filed with its minute order, a ''Memorandum of Decision,'' reading in part as follows:

''. . . It is undisputed that prior to the issuance of the Order to Show Cause relative to said fees and costs, plaintiff had paid to her counsel the sum of $500.00 on account of the appeal. It further appears that after the issuance of the Order to Show Cause she paid the cost of the transcript on appeal. The plaintiff borrowed both sums from her father. It does not appear that her father is pressing her for payment of the amounts borrowed by her. If her appeal is meritorious she will be entitled to judgment against the defendant for the amount paid by her for the transcripts on appeal and the same will be true if his cross-appeal lacks merit.

''Therefore, I see no reason for awarding costs at this time insofar as the appeal is concerned. Insofar as the defendant has appealed from the order which awards the plaintiff custody of her child during the summer vacation months and he refuses to comply with the decree granting her that

custody during the pendency of the appeal, it will be necessary for the plaintiff's counsel to appeal to the Appellate Court for relief. I think therefore that additional fees are warranted in the sum of $250.00 and the defendant is ordered to pay directly to plaintiff's counsel the sum of $250.00, the said sum to be paid out of the proceeds of the sale of his interest in the real property in Coronado as described in the interlocutory decree.''

It is conceded that an award of attorneys fees and costs on appeal is a matter committed to the sound discretion of the trial court. Under the facts here present, as set forth in the aforesaid ''Memorandum of Decision'' of the trial court, we cannot say that the latter abused its discretion or erred in denying plaintiff's application.

## DEFENDANT'S APPEAL

Defendant challenges the jurisdiction of the court over the minor child of the parties to this action. Concededly, the legal residence and legal domicile of plaintiff mother was in the State of California. Defendant father contends that his was in the State of North Carolina. If the court below was correct in determining that defendant father was a resident of the State of California at the time of the commencement of this action, then it necessarily follows that California was the legal residence and domicile of the child, and that the court was clothed with jurisdiction to make its order *in re* custody of said child.

Regarding his domicile and residence defendant testified that he had been on continuous duty in the Marine Corps for approximately twelve years; that when he went on active duty, his home was in North Carolina; that he was 34 years of age at the time of this trial; that at all times his military records showed that his home was in North Carolina; that he voted at elections only on two occasions, both of which were in the State of North Carolina; that he considered himself a resident of North Carolina at all times, and had been a continuous resident of that state since birth; and that he never had any intent, at any time, to establish his residence in the State of California, or anywhere else except in North Carolina.

On the other hand there was evidence that in 1952 defendant filed a divorce complaint against plaintiff in the County of San Diego, California, alleging therein, under

oath, that he had been a resident of the State of California for more than one year prior to the filing of said action. In this regard defendant testified he did not read the divorce complaint and did not remember having verified it. ▉ However, the general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents and is estopped from saying that its provisions are contrary to his intentions or understanding (*Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 462, 470, 471 [34 P. 84] ; *Nichols* v. *Hitchcock Motor Co.*, 22 Cal. App.2d 151, 153, 154 [70 P.2d 654]). Furthermore, the verity of defendant's testimony in this regard was for the trial court to determine.

▉ It was also shown in evidence that defendant purchased a home at Coronado in San Diego County, California. The fact that defendant was not continuously in California during the time in question loses considerable significance in regard to his legal residence and domicile when it is remembered that his position in the Marine Corps required him to reside in various places, both within and without the United States. A perusal of the record indicates that within the time here in issue, the defendant was in California more often and for longer times than he was at his claimed residence in North Carolina, where he went only to visit relatives. If the age-old phrase, ''actions speak louder than words'' be resorted to, it could appear that by purchasing a home in California and later instituting a divorce action in this state defendant thereby evidenced an intention to make the latter state his legal abode.

Added to the foregoing, insofar as the domicile of the minor child is concerned, is the fact that while the child was not physically present in California at the time the present action was commenced, he was, after the separation of the parties and at the time he was surreptitiously removed from this state by defendant, living with plaintiff mother in this state. Under the provisions of subdivisions (a) and (b), section 17.1 of the Welfare and Institutions Code of California, after separation of the parents, the child takes the domicile of the parent with whom it lives. It is also significant that while denying he was a resident of California, defendant not only admits in his pleadings, but affirmatively alleges that his wife had the required domicile to maintain

this action. And during the trial he asserted that he did not question the claimed legal residence of plaintiff or the jurisdiction of the court to grant a divorce.

While jurisdiction cannot be conferred by stipulation or agreement of the parties, it would seem rather anomalous to hold that while the parties to a marriage are living harmoniously within its borders, a state would acquire jurisdiction to grant a divorce only at the behest of one of the parties, in this case the wife.

While the evidence affecting domicile of defendant was in conflict, such a situation is not uncommon, and the decision in such cases rests exclusively with the trier of facts unless it can be said that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. Such is not the situation confronting us in the case at bar. We are persuaded that the instant case comes within the purview of the reasoning adopted in the case of *Sampsell* v. *Superior Court*, 32 Cal.2d 763, 773, 777, 778, 780, 781 [197 P.2d 739]. We have examined the cases cited by the defendant, but under the facts and circumstances present in the case now engaging our attention, we are satisfied they do not militate against the conclusion we have arrived at, that the court correctly held it had jurisdiction over the minor child of the parties hereto.

Finally, defendant urges that if it be held that the trial court had jurisdiction over the minor child of the parties, it abused its discretion in granting plaintiff the right to have custody of the child during the months of June, July and August of each year, and in ordering that the defendant provide transportation for the child to and from plaintiff's residence, together with the sum of $75 per month for the child's maintenance while he was with the mother during said summer months.

Here again, we are confronted with the question of the discretion of the trial judge which we have heretofore discussed, and of our inability to disturb his conclusion on the issue of custody unless it clearly be shown that the action of the trial court amounted to an abuse of that discretion. The fact that if sitting in the trial court we would have arrived at a different conclusion does not warrant a substitution of our judgment for that of the court who heard the witnesses, observed their demeanor on the witness stand and the manner in which they testified.

In arriving at the motives which actuated the trial judge in making the order here under attack, we are aided by his "Memorandum of Judgment" wherein, with reference to plaintiff mother, he said: "After reviewing all the evidence the Court has arrived at the opinion *that for at least at the time being,* it would be for the best welfare and interest of said minor child that it remain with its paternal uncle and aunt in North Carolina where it has a good home. In making this decision, the Court believes, from the evidence, *that the plaintiff and cross-defendant is good to the child and perhaps a good mother,* but under the present environment, and romantic intentions of the plaintiff and cross-defendant, which are so obvious, the Court believes that for the present, at least, the custody of the minor child should be awarded to the cross-complainant." (Emphasis added.)

Since the custody order may be modified at any time upon proper showing it may well be that the trial judge did not want to take plaintiff mother entirely out of the life of her child. Perhaps the court had in mind a letter written by defendant to his son under date of January 25, 1951, introduced into evidence, wherein he said: "Your mother (plaintiff) has shown her great and tender love for you by nursing you, by dressing and undressing you, by changing your diapers regularly and promptly, by maintaining a clean and comfortable room for you . . . by bouncing up night and day whenever you cried. These are but a few of the many, many things your darling and loving mother has done to reflect her tender and maternal love for her precious son." Also, the testimony of the defendant at the trial where he stated: "Plaintiff usually fed him (the child) properly in most instances," and "there were periods when I felt she showed genuine affection for Rodney." That the trial judge by his order held out a reward to plaintiff mother in the event of her reformation did not strain the quality of mercy nor amount to any abuse of discretion.

For the foregoing reasons, the portions of the judgment, and the order from which these appeals were taken are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.