[Civ. No. 26519. Second Dist., Div. One. Apr. 8, 1963.]

LOIS HOGUE FOLEY, Plaintiff and Appellant, v. PAUL JOSEPH FOLEY, Defendant and Appellant.

Stanley N. Gleis and Robert Ferguson for Plaintiff and Appellant.

Paul Joseph Foley, in pro. per., for Defendant and Appellant.

LILLIE, J.—In September of 1960 plaintiff wife instituted

an action in Los Angeles County for divorce or, in the alternative, separate maintenance. In addition to permanent support for herself and a division of the community property, she sought custody of the parties' three minor children, then 10, 7½ and 6½ years of age, and money for their maintenance. In February of 1961 an amended complaint was filed; it prayed for substantially the same relief. By his answer, as finally amended in December of 1961, defendant denied the crucial portions of the amended complaint; it was further alleged that the residence of the parties was in Arlington County, Virginia. Also by way of affirmative defense (and by way of recrimination) defendant alleged that plaintiff wife had been guilty of extreme cruelty, had deserted defendant and, finally, had committed adultery with several named parties over a period of years commencing in 1955.

Before the above joinder of issues, however, in October of 1960 plaintiff was awarded temporary support for three months and custody of the children; in January of the following year, the court made another temporary order in the wife's favor involving support and child custody—this time "until further order of court." Later that year (1961) the defendant, while exercising his right of reasonable visitation and deeming that there had been a change of circumstances, removed the children on his own initiative to Virginia where, on August 29 of that year, he instituted an action in Arlington County for an absolute divorce upon the grounds of his wife's asserted adultery. Custody of the children and termination of any rights of the wife in the husband's separate or community estate were also prayed for.[1]

The Virginia court having decided, following preliminary motions, that it had jurisdiction of the matter despite the pendency of the California action, the wife eventually filed an answer in the former proceeding and a trial of the issues followed. Before such trial, however, the wife (likewise on her own initiative) removed the children to California. On February 1, 1962, the Virginia court awarded the husband an absolute divorce upon the grounds alleged in the complaint, determined that the wife's right to alimony was forever extinguished and further adjudged that the claims of each party in and to the personal and real property of the other, then existing or thereafter acquired, were likewise ex-

---

[1]As will hereinafter be mentioned, the matter of the disposition of the parties' property rights is not referred to in the body of the complaint.

tinguished. No adjudication was made, however, respecting custody of the children; thus, the decree specifically provides that "this court declines to exercise its jurisdiction with respect to the determination of the custody of said children at this time," expressly taking note of the fact that the question was then pending in the California action. █ It is now definitely established, of course, that the courts of two states may have concurrent jurisdiction in the matter of child custody. (*Allen* v. *Superior Court,* 194 Cal.App.2d 720 [15 Cal.Rptr. 286].)

On April 23, 1962, the California proceeding came on for trial. Before any testimony was taken, and after argument by counsel, the trial court held that the Virginia decree (having since become final) barred the claims of plaintiff wife to a divorce (or separate maintenance) and, therefore, to alimony.[2] This ruling, according to the trial court, limited the issues to child custody and a determination (and division) of the parties' interests in the California community property, if any.

Following trial of the above issues, the court gave custody of the children to the father who was permitted to remove them to his home in Arlington, Virginia. The husband was also awarded all of the community property save and except the sum of $25,000, judgment in which amount was given the wife in full satisfaction of all her rights "in and to any and all of the community property of the parties hereto, whatever the same may be, and wheresoever located."

The wife's appeal challenges both of the above determinations. By cross-appeal, the husband contends that it was error to award the wife the sum in question; he also assigns as error an award of $5,000 counsel fees to the wife's attorney.

█ There is no merit to the wife's first contention that the evidence was insufficient to justify the change of custody from the mother to the father. The trial court made a finding as to the impropriety of plaintiff's conduct and further found that "it exposed the said minor children to an improper influence." Such finding is not without support in the record. In 1955 there was a romantic interlude with one Martin; as appears from one of plaintiff's letters to her parents, couched in remorseful but poignant terms, this attachment continued for a considerable period of time. The husband

---

[2]The wife no longer disputes the correctness of the court's holding in this regard.

having forgiven this indiscretion, she sought advice from a certain psychologist with whom, she later stated, she was in love. The instability of plaintiff's character is further demonstrated by other incidents. Even after the complaint for divorce was filed, wherein she claimed to be a fit and proper person to have the children's custody, plaintiff admittedly spent the night at a motel with one Hodges whom she knew was a married man with children and living with his wife. There was an act of intercourse with another man, likewise after the institution of her action, at a Beverly Hills hotel; although plaintiff testified that she did not consent to such advances, it was for the trier of fact to evaluate such testimony in the light of the attending circumstances. Again, in the summer of 1961 plaintiff and a girl friend spent 10 days at a beach house with the parties' three children and the friend's 10-year-old daughter. The four children slept in the only bedroom, while plaintiff and her friend slept in the adjoining living room. Two of the several correspondents named in the complaint spent one or more evenings at this house under conditions from which inferences reflecting unfavorably upon plaintiff's moral standards fairly could be drawn. Still other incidents tending to negative her claims of fitness might also be mentioned.

Although there was evidence that the children knew that their mother had male "friends," plaintiff now contends that her association with these persons, and even her admitted adultery, should be excused or overlooked in view of her separation from her husband and the pendency of her suit for divorce, that her conduct was not detrimental to the children's welfare and, finally, that her fitness to have custody should not be judged by acts occurring considerably prior to the hearing.

■ "To be entrusted with the rearing of children a mother should be possessed of such character and conduct that by the force of her example she can train them in paths of morality, righteousness and rectitude." (*Currin* v. *Currin*, 125 Cal.App.2d 644, 650 [271 P.2d 61].)[3] Too, "Fitness to have the custody of a minor child requires more than affection and the ability to properly feed, clothe and house the child. It also requires an environment which will not be detrimental to the character and morals of the child" (*Reynolds* v.

---

[3] In *Currin* it was unavailingly argued, as is argued here, that there was no showing of the manner in which the wife's conduct affected the minor child (then 1½ or 2 years of age) or his morals adversely.

*Reynolds*, 149 Cal.App.2d 409, 413-414 [308 P.2d 921])[4] whose ultimate welfare is the prime consideration. The record in the instant case reveals neither the wholesome environment nor the exemplary behavior contemplated by the above statements of the law. At the very least, as the trial court noted at the close of testimony, the evidence manifested "a complete lack of judgment as to the situation to which the children should be exposed." ▮ If plaintiff showed such "lack of judgment" when the children were still of tender years (as in the case of the Martin affair) and thereafter (some five or six years later) engaged in the questionable social activities encountered at bar, the trial court properly took into consideration such past behavior as having a direct bearing upon the issue of present unfitness. (*Prouty* v. *Prouty*, 16 Cal.2d 190, 194 [105 P.2d 295].)

▮ "In decisions too numerous to mention, it has been said that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. And this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal." (*Currin* v. *Currin, supra,* 125 Cal.App.2d 644, 651.) In the present case such showing can hardly be classified as substantial—certainly it is not clear and convincing.

▮ Since the trial court is given a wide discretion in these matters, it was likewise not error (as further claimed by plaintiff) to permit the father to remove the children to Virginia where he has a home and the facilities suitable for their proper rearing. ▮ The mere fact that plaintiff may thus be deprived of reasonable visitation rights is not necessarily determinative; again, the welfare of the child is the controlling consideration. See extensive discussion of the problem in *Stack* v. *Stack,* 189 Cal.App.2d 357 [11 Cal.Rptr. 177].

Plaintiff's second and final point criticizes as an unjust division thereof the award of all of the community property

---

[4] In *Reynolds* the minor was also of tender years, being aged 7, approximately.

to the husband save and except what is described as "the arbitrary sum of $25,000." She does not attack the finding that certain described items were separate property of the husband.

Preliminarily and as noted earlier, the trial court determined, and in our opinion correctly so, that the Virginia decree did not foreclose an inquiry into plaintiff's claims as to the existence of community property in California and her claims as to vested rights therein. The body of the complaint in that proceeding made no mention of the parties' community property, although the prayer asked that "the Court terminate whatever rights the defendant may presently have in and to any of the plaintiff's separate or community property."

But in this state the prayer is no part of the statement of the cause of action (*Merlino* v. *West Coast Macaroni Mfg. Co.*, 90 Cal.App.2d 106 [202 P.2d 748]); and defendant has not furnished authority that the rule in Virginia is otherwise. Consequently we find that the wife's answer in the Virginia action understandably makes no reference to the parties' property; and even though the Virginia decree "extinguished" the rights of each party in and to the property of the other, no reference is specifically made to their community character. Undoubtedly the judgment in such matters of a sister state may be res judicata and entitled to full faith and credit in California to the extent that it determines the rights and equities of the parties (*Rozan* v. *Rozan*, 49 Cal.2d 322 [317 P.2d 11]); but the rule of estoppel has been applied "only where the record shows an express finding upon the *allegations* as to property." (Italics added.) (*Estate of Williams*, 36 Cal.2d 289, 297 [223 P.2d 248, 22 A.L.R.2d 716].) See also *Spurr* v. *Daniels*, 152 Cal.App.2d 867 [313 P.2d 621].

There was evidence that from 1958 to 1960 the defendant, who is a lawyer and certified public accountant, received cash fees from three cases aggregating $178,000. At or about the same time he admitted receipt of $20,000 from a company for whom he performed services on a retainer basis. Bank deposits during the above period amounted to $195,000 approximately. In addition there was land in the Palm Springs area which according to the husband's declaration at the time of the temporary hearing, was worth $10,000, and some mining stock valued at $20,000 more or less. But there was no finding as to the value of the community estate; to the contrary, it was expressly found that "the full extent, nature and value of these, and of all of the other items of the parties'

community property, have not been fully ascertained due to the plaintiff's lack of diligence in this regard." As the court observed upon the close of testimony, it was presented with "no records except a few checks and the bank statement. . . . That raises an issue that is very difficult to resolve when there is nothing in the way of a record for the Court to refer to [by way of community debts and expenses]." On the other hand, however, defendant admitted that he withdrew $50,000 from the bank on May 5, 1960; his explanation of the use he made thereof was evasive and unsatisfactory—so much so that the trial court referred to defendant as a "prevaricator" respecting this particular phase of the litigation. The award of $25,000 represents one-half of the above sum.

Upon the trial, the court was referred to two lines of cases which assertedly here control. In *Pope* v. *Pope*, 102 Cal.App. 2d 353 [227 P.2d 867], and *White* v. *White*, 26 Cal.App.2d 524 [79 P.2d 759], it is said that the husband has the duty to account for community property under his control; these decisions, says the plaintiff, put the burden on the defendant—and he did not satisfactorily account. The defendant relies on *Zar* v. *Zar*, 154 Cal.App.2d 681 [316 P.2d 685], and *Baker* v. *Baker*, 98 Cal.App.2d 424 [220 P.2d 576], wherein it is held that where a wife seeks a division of the community property, the burden is with her to prove the value of the various parcels. Despite the seeming contrariety of the above decisions, defendant has raised a point on his cross-appeal which, we think, is dispositive of the problem.

 Defendant obtained the Virginia decree on the ground of adultery—that issue in the case is now res judicata. He was thus entitled to receive more than one-half of the community property, and the court in its discretion might have awarded all of the community property to him. (Civ. Code, § 146, subd. (a).) As a cross-appellant from that portion of the judgment, he very properly complains that in the absence of a finding of the value of the respective properties awarded to each party, it cannot be determined that he in fact received more than the one-half to which he is entitled. (*Villafuerte* v. *Villafuerte*, 125 Cal.App.2d 466, 469 [270 P.2d 526].) If, upon remand, the court is presented with substantial testimony as to values as well as community expenditures reflected by a proper accounting showing the net condition of the community estate, neither side will have to complain that because of the meager evidence before it resort

was necessarily had to speculation by the trier of fact with respect to the issues then at bar.

The remaining point on the cross-appeal relates to the award of $5,000 counsel fees to the wife's attorney. Not only is it assertedly excessive, but it is also defendant's position that the court was without power to make such an order because the divorce action was then no longer pending in view of the Virginia decree. It is provided in section 137.3 of the Civil Code (being a recodification of the first sentence of section 137) that "[d]uring the pendency of any action for . . . divorce . . . the court may order the husband . . . to pay such amount as may be reasonably necessary for the cost of maintaining . . . the action and for attorney's fees." Under section 137 it was settled "that the phrase 'when an action for divorce is pending,' embraced many diverse proceedings growing out of the divorce action and arising after entry of the final decree." (*Lerner* v. *Superior Court,* 38 Cal.2d 676, 685 [242 P.2d 321].) Thus, in *Wilson* v. *Wilson,* 33 Cal.2d 107 [199 P.2d 671], the court upheld an allowance of attorneys' fees in a proceeding (after the divorce had become final) where the wife sought compliance with an order made to accomplish a just division of the community property. We can perceive no essential difference between the situation in *Wilson* and that with which we are presently concerned. Heretofore we have held that the issue of community property, and its division, was properly before the trial court. It was not error, therefore, for the order for fees to be made.

Furthermore, there was the additional issue of child custody which is inherently a domestic relations matter where the court is empowered to award attorneys' fees upon a showing of necessitous circumstances. (*Goto* v. *Goto,* 187 Cal.App. 2d 594 [10 Cal.Rptr. 14].) However, it appears that in making the allowance the trial court took into consideration the efforts made by counsel to secure for his client a share of the community property. In view of our conclusion that the cause must be remanded for further proceedings, the results of this litigation are presently inconclusive, and one of the factors determinative of an attorney's fee is the result achieved. (*Speer* v. *Speer,* 209 Cal.App.2d 233, 241 [25 Cal.Rptr. 729].) Accordingly, the allowance of such fee in the amount ordered cannot stand.

Insofar as the judgment provides for the custody of the children, it is affirmed; all other portions of the judgment appealed from are reversed and remanded for further pro-

ceedings not inconsistent with the views hereinabove expressed. In the interests of justice, neither party will recover costs. The stay of execution heretofore issued by this court, limited to that portion of the judgment below pertaining to the custody of the minor children, will terminate and be discharged immediately upon the judgment of this court becoming final.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 29, 1963.