[Civ. No. 18184.  Second Dist., Div. Three.  Aug. 20, 1951.]

CECIL B. MORGAN, Appellant, v. VIRGINIA B. MORGAN, Respondent.

J. Thomas Russell and Robert E. Ford for Appellant.

Pollock & Pollock, Edward I. Pollock and David Pollock for Respondent.

SHINN, P. J.—Cecil B. Morgan instituted this action for divorce. His complaint alleged that the parties had no community property, having by written property settlement divided and converted into separate property such community property as they had at the time. The complaint alleged that the parties separated May 18, 1946. Defendant wife answered, alleging that the separation took place on the 30th of September, 1947, and denying the allegations with respect to the property settlement agreement and the alleged grounds for divorce. She also filed a cross-complaint alleging cross-defendant to be possessed of automobiles and other personal property which was community property. By her cross-complaint under appropriate allegations she sought temporary and permanent support. The action was tried, findings were waived, and by the decree defendant was granted support of $100 a month until the further order of the court, attorney's fees and costs. The decree also adjudged that the property settlement agreement of the parties under date of June 5, 1946, was voided and annulled by reconciliation of the parties during the month of September, 1947. Plaintiff husband appeals.

The sole contention on the appeal is that the property settlement was valid, was not cancelled or annulled by the reconciliation of the parties, and that defendant had received by way of support everything she is entitled to receive, presently or in the future.

The parties married September 2, 1939. On and prior to June 5, 1946, they were living apart. On that date they executed a property settlement agreement, by the terms of which the husband agreed to pay the wife $1,200, in installments of $100 per month. He also transferred and set over to the wife all his interest in any community property other than household furniture. In 1940 a home had been acquired

in the name of the wife. The husband executed a quitclaim deed in favor of the wife in May of 1946, following a visit of the parties to a lawyer to arrange for the institution of a divorce suit by the wife. The property settlement agreement recited that the parties were living apart, and provided for the payment of fees to the wife's attorney, $50 forthwith, $50 upon the signing of the agreement, and $100 if and when the wife obtained an interlocutory decree of divorce. In consideration of the benefits to be derived under the agreement the wife waived all right to further support and there were the usual mutual releases of claims, past, present and future.

Mrs. Morgan sued for divorce in June, 1946. Although Mr. Morgan defaulted, the case was not tried until September 4, 1947, when Mrs. Morgan received an interlocutory decree. By the decree the court approved the property settlement agreement. Mr. Morgan was staying at the house occupied by his wife in the months of July and August, 1947, but the parties were not living together. At her home, in the evening of September 4, 1947, Mrs. Morgan informed her husband that she had obtained her decree. Mr. Morgan said he did not want a divorce and, ''let's forget the whole thing . . . it is never final until you sign it. Forget the whole thing and we will start over.'' Plaintiff and defendant then lived together as husband and wife for the remainder of the month of September, during which time they conducted themselves, at home and elsewhere, alone and with friends, as married people usually would do. At the end of September Mr. Morgan left and did not return. Mrs. Morgan did not consent to the separation. On October 18, 1947, Mrs. Morgan filed in the divorce action an affidavit stating that she and Mr. Morgan had become reconciled and had lived and cohabited together. On November 15, 1947, Mr. and Mrs. Morgan executed a dismissal of the divorce action, which was duly filed. The present action was begun by Mr. Morgan January 7, 1948.

The only references in the pleadings to the property settlement agreement are the allegations in the complaint that such an agreement was executed, dividing the community property of the parties, a denial of those allegations in the answer, and the allegation in Mrs. Morgan's cross-complaint that her action for divorce in which she had been granted an interlocutory decree had been dismissed by mutual consent ''for the reason that a reconciliation was effected between the parties hereto during the month of September, 1947; and

the parties hereto resumed their marital rights, duties and obligations as husband and wife.'' In his answer to the cross-complaint Mr. Morgan did not set out the agreement as a defense to the claim for support.

In order to properly place in issue the question whether a cancellation of the agreement was effected, in whole or in part, through the reconciliation, the pleadings of Mrs. Morgan should have alleged an agreement of the parties to cancel it, and the pleadings of Mr. Morgan should have contained a denial. Although the issue was not clearly pleaded, it nevertheless was present by reason of Mrs. Morgan's claim for separate maintenance and attorney's fees. The agreement was placed in evidence by plaintiff early in the trial, and it is clear that the action was tried upon the theory that the validity of the agreement was in question insofar as it provided that the payment by Mr. Morgan of $1,200 would forever release him from his obligation to support his wife.

██ Whether, in such a case, the agreement does or does not continue in force, depends upon the mutual intentions and understanding of the parties. It is to be determined by the court as a question of fact, and upon indirect evidence in the absence of direct evidence. As said in *Estate of Boeson,* 201 Cal. 36, 42 [255 P. 800] : ''Property settlements entered into by the spouses, it is true, should be set aside in cases where the acts, conduct, and relations of the parties thereafter are of such a character as to justify the conclusion that they intended and agreed orally to abrogate the same [citing cases].'' It has frequently been held, at least as to executory provisions of a property settlement agreement, that cancellation will be inferred and former rights will be restored by reconciliation and resumption of marital relations. (*Mundt* v. *Connecticut Gen. Life Ins. Co.,* 35 Cal.App.2d 416 [95 P.2d 966]; *Wells* v. *Stout,* 9 Cal. 479; *Sargent* v. *Sargent,* 106 Cal. 541 [39 P. 931]; *Lloyd Corp., Ltd.* v. *Industrial Acc. Com.,* 61 Cal.App.2d 275 [142 P.2d 754]; *Gregg* v. *Manufacturers Bldg. Corp.,* 134 Cal.App. 147 [25 P.2d 43, 1014]. See, also, 30 C.J. 1065, 1066; Nelson on Divorce, vol. 1, p. 495, § 13.14.)

Each case is to be decided on its own facts. It is unnecessary to distinguish the cases relied upon by appellant which hold only that the evidence was sufficient to support findings contrary to the claim that the several property settlement agreements were abrogated by subsequent oral agreements.

The crucial question was whether the agreement should be given prospective effect as concerned the claim and the right of Mrs. Morgan to receive support. That is the question involved on the appeal. Findings were waived. The decree, insofar as it cancels the agreement, rests upon implied findings that the parties understood that Mr. Morgan, in joining in the reconciliation and resumption of marital relations, abandoned his contractual rights of freedom from the obligation of support, and assumed anew the legal obligations of a husband; also that Mrs. Morgan abandoned her right, which was expressly given by the agreement, to live separate and apart from her husband, and assumed and was restored to the customary obligations and rights of a wife. There was ample evidence to sustain such findings. Mrs. Morgan testified she believed the reconciliation to be permanent. Mr. Morgan's declarations and conduct certainly indicated that he shared that belief. Good faith of the parties was to be presumed. It is scarcely conceivable that a reconciliation with resumption of marital relations such as the one in evidence would have been entered upon under circumstances that would have enabled the husband to refuse to support his wife and to leave her without cause at any time, and without liability or obligation to her as long as the marriage existed, or after it should be terminated by divorce. In the absence of any evidence of her express agreement continuing the freedom of the husband from liability for support it was reasonable to infer that the parties intended to resume a normal married life and the legal obligations that go with it. We may not disturb the finding that the property settlement agreement was cancelled by consent of the parties.

It was not necessary for Mrs. Morgan to rescind the agreement before questioning its continuing force. There are situations in which a party to a property settlement agreement should not be allowed to seek its annulment otherwise than through the remedy of rescission, but we do not regard the present case as one where rescission was required. It was not shown that Mr. Morgan had a community interest in the real property and, as we have said, that property was not a subject of the property settlement agreement. So far as the $1,200 was concerned, we must presume that Mr. Morgan could have been required to support his wife during the year following the date of the property settlement if he had not

agreed to do so. If there was household furniture at the time of the agreement, there is nothing in the record to show that it had sufficient value to justify any further litigation concerning Mr. Morgan's possible right therein. ■ But regardless of these considerations, the agreement was cancelled by mutual consent, without any demand by Mr. Morgan that he be reimbursed in any manner. If he had been entitled to demand restoration he waived his right.

The judgment is affirmed. ·

Wood (Parker), J., concurred.

Vallée, J., dissented.

Appellant's petition for a hearing by the Supreme Court was denied October 18, 1951. Carter, J., and Schauer, J., voted for a hearing.