[Civ. No. 27924. Second Dist., Div. Two. Oct. 26, 1964.]

ALFRED McKEON et al., Plaintiffs and Respondents, v. SANTA CLAUS OF CALIFORNIA, INC., et al., Defendants and Appellants.

Caryl Warner and Warner, Sutton & Warner for Defendants and Appellants.

William Leeker for Plaintiffs and Respondents.

ROTH, P. J.—This is an appeal from a judgment which among other things requires appellants to sell to respondents one-half of the stock they acquired from a minority shareholder.

On or about October 5, 1959, Alfred and June McKeon (respondents) executed a written contract with Ward Wright (Wright), one of appellants, wherein it was agreed that Wright would purchase from respondents 17,348 shares of the stock of Santa Claus of California, Inc., a California corporation, which was an amount equal to one-half of respondents' total stock of 34,696 shares and in addition one-half of assets of a related corporation. This latter purchase of assets is immaterial to this appeal.

The purchase price was $29,500 of which $6,500 was paid in cash and $23,000 was evidenced by a promissory note. Wright agreed as part of the contract, that he would loan to the corporation concurrently with the execution of the contract the

sum of $10,000 to be used as was expedient for the payment on account of creditors' claims against the corporation then existing.

The contract provided in pertinent part:

"BOTH PARTIES HERETO AGREE AS FOLLOWS:

"1. It is their intent to acquire the minority stock holdings as soon as possible.

"2. Both agree to vote their stock the same way.

"3. Harold A. Lewis, . . . is hereby appointed as the permanent arbitrator, and in the event of a dispute between the parties, such dispute shall be submitted to such arbitrator for decision. . . .

"If either party wishes to sell his stock he must first offer it to the other party at the then book value, . . ."

In the preamble to the contract one of the recitals was as follows:

"That the balance of the outstanding shares of the common stock in Santa Claus of California, Inc., are owned as follows: Gilbert McKeon, 5,000; Wayne Mills, 1,000; Roger Coe, 1,000; and Tom Hungerford, 1,000."

In January of 1960, Rosemary Wright, the minor daughter of appellants, purchased in her name the 5,000 shares owned by Gilbert McKeon. This purchase obviously gave to Wright control of the corporation. The money for the purchase of the controlling interest came from a joint bank account maintained by Rosemary and her parents, all of whom are appellants.

Respondents had no notice of the purchase by Rosemary but promptly when they learned of the purchase, they offered to reimburse appellants for one-half of the amount of the stock or to credit Wright's debt to respondents in a like amount. Appellants refused on the basis that there was no contractual obligation to split the stock.

In their complaint respondents alleged "that it was the intent and purpose of the parties and said agreement of October 5, 1959, that the ownership of stock in said Corporations would be equal as between the McKeon interest and the Wright interest, and that the parties would attempt to purchase the stock of the minority stockholders in said Corporation and that any stock so purchased would be divided equally between the McKeon interest and the Wright interest or would be held and retired by said Corporation." It was alleged further that "without their knowledge or consent, defendants Ward Wright, Rosalie Wright and Rosemary Wright

entered into a conspiracy to purchase the minority stock interest of one Gilbert McKeon . . . . That the purchase price for said stock was paid out of common funds owned by defendants . . . and that the purpose of such purchase was to enable said defendants to obtain an advantage over plaintiffs by virtue of being majority stockholders of said Corporation.''

There was no demurrer nor was there any motion to strike. The crucial question at the trial and also on this appeal is set forth in the pretrial statement as follows: ''Under the terms of the contract of October 5, 1959, were defendants Wright, or any of them, entitled to purchase the Gilbert McKeon stock in Santa Claus, without offering one-half (½) thereof to plaintiffs.''

The trial court upon substantial evidence made among others, the following pertinent findings:

''IV

''It is true that it was the intent of plaintiffs and defendant, Ward Wright, in entering into said contract, that plaintiffs and said defendant would, at all times, own an equal number of the outstanding shares of said corporation.''

''V

''It is true that it was the intent of plaintiffs and defendant, Ward Wright, in entering into said contract that they would jointly attempt to purchase the outstanding stock in said corporation owned by the minority stockholders, and that any minority stock so purchased would be divided equally between the plaintiffs and said defendant.''

''XIV

''It is true that the sole purpose of defendants Wright in acquiring said Gilbert McKeon stock was to obtain control of Santa Claus of California, Inc., and to oust plaintiffs as officers and directors of said corporation.''

■ The record shows substantial evidence to support the foregoing findings. No serious attack on said findings or on any others is made by appellants, since no testimony, (except isolated excerpts) is called to the court's attention, to show that there is no substantial evidence to justify said findings. In the absence of an affirmative showing of a lack of substantial evidence it is settled law in this state that appellants are foreclosed from questioning the sufficiency of the evidence to support the findings. Thus, in *Dietrich* v. *Dietrich,* 226 Cal.App.2d 650, 652 [38 Cal.Rptr. 261, 712], it is said: ''. . . The brief makes no pretense of setting forth or sum-

marizing all the material evidence bearing upon the essential issues, and, for this reason alone, it properly could be held that appellant is foreclosed from questioning the sufficiency of the evidence to support the findings. (*Bongiovanni* v. *Rackow*, 212 Cal.App.2d 550, 551-552 [28 Cal.Rptr. 155]; *Davis* v. *Lucas*, 180 Cal.App.2d 407, 409-410 [4 Cal.Rptr. 479].)''

Appellants apparently commenced to try their case on the theory that the contract was certain and unambiguous and that the contract meant, and that both parties understood it to mean, that the parties in the future would agree on how to buy and divide the minority shares, which either might acquire and that the contract was not a firm and settled agreement on that facet of the subject matter. Respondents contended that the contract clearly and with certainty showed an agreement to share equally any minority stock that was acquired.

During the direct examination of respondent Alfred Mc-Keon, respondents' counsel tried to introduce evidence concerning a prior tentative agreement of the parties and the concurrent oral understanding of the parties at the time of the execution of the contract here under review.

All but one such attempt was successfully objected to by appellants on the ground that such evidence violated the parol evidence rule. However, on cross-examination, appellants opened the door they had theretofore successfully closed by detailed examination in respect of which their objections had been sustained. Thereafter, on redirect, respondents introduced evidence to the effect that the parties understood that their ownership of the corporations would be on an equal footing and that the minority stock would be acquired equally.

Appellants now urge that since the contract was certain on its face, such parol evidence was not admissible and further, that if the contract must be aided by parol evidence, there can be no remedy such as specific performance.

Appellants opened the door to the admission of the parol evidence. They cannot now complain. (*Ganiats Construction, Inc.* v. *Hesse*, 180 Cal.App.2d 377, 388 [4 Cal.Rptr. 706].)

It is settled that equity will not enforce an uncertain contract. (Civ. Code, § 3390; *Gould* v. *Callan*, 127 Cal.App. 2d 1 [273 P.2d 93]; *German Sav. & Loan Soc.* v. *McLellan*, 154 Cal. 710, 716 [99 P. 194].) It is however equally settled that parol evidence which does not vary or contradict the written words and terms of a contract is admissible to explain

an ambiguity, or to give meaning and content to words used. (*Ganiats Construction, Inc.* v. *Hesse, supra*; *Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 525 [297 P.2d 428]; *Britschgi* v. *McCall*, 41 Cal.2d 138, 142 [257 P.2d 977]; *Yucca Water Co.* v. *Anderson*, 177 Cal.App.2d 253, 256 [2 Cal.Rptr. 162]; *United Truckmen, Inc.* v. *Lorentz*, 114 Cal. App.2d 26, 29 [249 P.2d 352].) ■ The fact that one party questions the meaning of the words and clauses used in an agreement is at least evidence that there may be an ambiguity. (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co., supra*, at p. 524.)

The entire contract plus the oral evidence directed to the prior negotiations of the parties shows that the parties clearly intended to acquire ownership of the minority stock on an equal basis in order to protect the status quo. Respondent Alfred McKeon's testimony that it was the intent of the parties to acquire the stock and that this was to be made either by direct payment to appellant of one-half the amount expended or by the deduction of such amount from the sum owed respondents under the contract, was not contradicted or denied.

■ The trial court did not find, as appellants argue in their brief, that the contract was uncertain and ambiguous. The court did express an opinion to that effect during the trial and in a memorandum opinion. However, such expressions in no way affect the findings of fact of the trial court. (*Marosi* v. *J. W. Robinson Co.*, 107 Cal.App.2d 811, 815 [238 P.2d 78].)

■ The trial court did not err in specifically enforcing the contract made certain by such parol evidence. (*Riley* v. *Riley*, 121 Cal.App.2d 303 [263 P.2d 47].)

■ Appellants also urge that the trial court improperly disposed of certain internal affairs of the corporation, contending that such disposition can only be made in a derivative action validly brought on behalf of the corporation. Some of the issues were: status of the officers, money owed to the corporation by appellants and the ownership of certain corporate assets claimed by appellants.

All of these issues were pleaded in the complaint, and answer was made thereto and evidence taken thereon without objection by appellants. ■ It is a well established principle that once the jurisdiction of a court of equity is invoked, it has the power to pass on all questions raised which affect the parties before it. (*Hannah* v. *Wahlberg*, 128 Cal. 407,

410 [60 P. 1035]; *Rossi* v. *Rossi,* 134 Cal.App.2d 639, 642 [286 P.2d 563]; *Beeler* v. *Plastic Stamping, Inc.,* 144 Cal.App. 2d 306, 309 [300 P.2d 852]; *Pailhe* v. *Pailhe,* 113 Cal.App. 2d 53, 64 [247 P.2d 838].) ▮▮▮ The corporation was named as a party defendant in the complaint. The trial court's adjudication of these issues was entirely consonant with equity and justice.

The judgment is affirmed.

Herndon, J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied November 17, 1964, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1964.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.