[Civ. No. 26982. First Dist., Div. One. Dec. 8, 1970.]

MARGARET B. COCHRAN, Plaintiff and Respondent, v.
HOWARD M. COCHRAN, Defendant and Appellant.

342

## COUNSEL

Walter T. Winter and Peter Schwarz for Defendant and Appellant.

Cyril Saunders for Plaintiff and Respondent.

## OPINION

SIMS, J.—Defendant Howard M. Cochran has appealed from a final judgment of divorce entered in favor of Margaret B. Cochran "except that portion that determines that the marriage between the parties is dissolved and that portion that determines that the provisions in the interlocutory judgment herein is made binding upon the parties hereto."[1]

---

[1]Reference to the original records of the proceedings indicates that the "Final Judgment of Divorce" was prepared on a printed form (Co.Clerk F 1282) which includes the following language, "It is further ordered and decreed that wherein said interlocutory decree makes any provision for alimony or the custody and support of children, said provision be and the same is hereby made binding on the parties affected thereby the same as if herein set forth in full, and that wherein said interlocutory decree relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties therein declared to be entitled thereto." Following this printed form the following provisions were typed in: "It is hereby ordered, adjudged and decreed that the defendant pay plaintiff the sum of $4,000.00 as her share of community property, accumulated while the reconciliation was attempted.

"It is further ordered, adjudged and decreed that defendant shall pay plaintiff the sum of $200.00 per month as alimony until further order of this court.

"It is further ordered, adjudged and decreed that defendant shall pay Cyril Saunders, plaintiff's attorney the sum of $300.00 attorney's fees and $8.00 court costs in this matter."

The defendant contends that since there was a reconciliation after the entry of an interlocutory decree of divorce, the plaintiff had to elect whether to proceed·under the terms of that decree on the theory there had been a conditional reconciliation which failed, or to proceed on the theory that the interlocutory decree was a nullity because of the reconciliation, and assert such rights as accrued to her during the entire marriage, including the period of reconciliation. He asserts that having elected to proceed on the interlocutory decree, from which no appeal had been taken, she was barred by its terms, and the court erred in the final decree by awarding her alimony, which had been waived in connection with the entry of the interlocutory decree, in awarding her costs and attorney's fees, and in awarding her a portion of property allegedly accumulated during the period of reconciliation. An examination of these contentions in the light of the record leads to the conclusion that the court erred in awarding the plaintiff alimony, attorney's fees and costs, and that the judgment must be modified by deleting these provisions from the final decree.

## The Interlocutory Judgment

On January 24, 1966 the plaintiff filed her complaint for divorce on the grounds of the defendant's extreme cruelty. She alleged marriage on December 7, 1964 and separation January 18, 1966. She prayed for a divorce, for an award of the community property, and for alimony. The defendant filed an answer and a stipulation waiving notice of time and place of trial and findings of fact and conclusions of law. At the hearing the plaintiff testified that she was not seeking alimony and that she knew that by not seeking alimony at that time she would at no time be able to come back and obtain any monies from the defendant. She further testified that she had agreed to accept the sum of $1,200 as her share in any community property that might exist between the defendant and herself.

The interlocutory judgment of divorce, entered February 10, 1966 on a printed form, erroneously indicates that the defendant defaulted in the proceedings, whereas he in fact filed an answer and was represented by his attorney at the hearing. Inserted in the form were provisions awarding the plaintiff $1,200 as her interest in the community property, and ordering the defendant to pay the community debts and obligations, and plaintiff's attorney's fees and costs. There was no provision for alimony. No appeal was taken from this judgment.

The effect of the interlocutory decree and the status of the parties at that stage of the proceedings was, as outlined by this court in *Grant* v. *Superior Court* (1963) 214 Cal.App.2d 15 [29 Cal.Rptr. 125], as follows: "It is well settled that where, as here, an interlocutory judgment of divorce has

become final in the sense that it is no longer subject to appeal, motion for new trial or relief pursuant to section 473 of the Code of Civil Procedure, it is res judicata on all questions determined therein including the property rights of the parties. Absent any continuing authority of the court to modify its orders relating to alimony, the trial court is without jurisdiction to vacate or modify such judgment in any way. [Citations.] █ Although an interlocutory judgment of divorce does not dissolve the marriage, where it neither awards alimony to the wife nor reserves the jurisdiction to make an allowance for her support, such judgment terminates the obligation of support and relieves the husband from all liability therefor. [Citations.] In such event, the final dissolution of the marriage is the only question held in abeyance pending the entry of the final decree." (214 Cal.App.2d at p. 20. See also, *Estate of Abila* (1948) 32 Cal.2d 559, 560 [197 P.2d 10]; *Leupe* v. *Leupe* (1942) 21 Cal.2d 145, 148 [130 P.2d 697]; *McClure* v. *McClure* (1935) 4 Cal.2d 356, 359 [49 P.2d 584, 100 A.L.R. 1257]; *Olson* v. *Superior Court* (1917) 175 Cal. 250 [165 P. 706, 1 A.L.R. 1589]; *Brown* v. *Brown* (1915) 170 Cal. 1, 3 [147 P. 1168]; *De Luca* v. *Superior Court* (1968) 262 Cal.App.2d 254, 258-259 [68 Cal.Rptr. 535]; *Estate of Smith* (1966) 241 Cal.App.2d 205, 209 [50 Cal.Rptr. 374]; *Estate of Hudspeth* (1964) 225 Cal.App.2d 759, 764 [37 Cal.Rptr. 778]; *Carlson* v. *Carlson* (1963) 221 Cal.App.2d 47, 53-55 [34 Cal.Rptr. 195]; *Adamson* v. *Adamson* (1962) 209 Cal.App.2d 492, 501 [26 Cal.Rptr. 236]; *Broome* v. *Broome* (1951) 104 Cal.App.2d 148 [231 P.2d 171]; and *Overell* v. *Superior Court* (1938) 29 Cal.App.2d 418, 420 [84 P.2d 789]. Cf. *Bernard* v. *Bernard* (1947) 79 Cal.App.2d 353, 355 [179 P.2d 625].)

*The Reconciliation*

The declaration filed by plaintiff, in which she sought the relief which was ultimately granted, recites: "That within two weeks after the interlocutory decree was signed in this matter, the defendant . . . phoned plaintiff many times, begging her to return to him. She was then living in Vancouver, Canada. On or about May 1, 1967, [*sic*] they became reconciled, and she returned from Vancouver, Canada, with [defendant] to San Francisco, where they continued to live as man and wife. Between the 1st day of May, 1967, [*sic*] and October 20, 1968, the plaintiff was informed by defendant that they had accumulated a sum in excess of $8,000, all of which is in the possession and control of the defendant. That during the period of time between May 20, 1968, and October 1968, the defendant was guilty of cruel and inhuman treatment toward this plaintiff. The treatment was such and so severe that plaintiff is now under a doctor's care." The prayer was for $200 per month support until further order of court and for attorney's fees in the sum of $300, and $25 costs. On December 4, 1968, the date plaintiff executed her declaration, the trial court issued its order commanding the defendant

to show cause "why plaintiff should not be granted a final decree of divorce and that defendant should not pay plaintiff one half of all community property accumulated by the parties between the 10th day of May, 1966, and the 20th day of October, 1968, and shall pay plaintiff the sum of $200 per month as alimony and support and attorney's fees in the sum of $300 and court costs of $25."

The matter came on regularly for hearing on December 23, 1968. The plaintiff's attorney asserted he was seeking for his client a final decree, an accounting of funds that the couple earned during a period of reconciliation, and support. The defendant's counsel immediately pointed out that the interlocutory decree was res judicata as to the matters covered therein. Although he did not oppose the entry of a final decree, he objected to relitigating in this proceeding the questions of the defendant's cruelty, of his obligation to support the plaintiff, and of the property rights of the parties.

It was brought out that the plaintiff had filed a new action for divorce in which another judge of the same court had denied an application for support on the grounds of the pendency of this prior action, and that it had been recommended that this action be dismissed so that the plaintiff could proceed in the new action. The plaintiff declined to so do.

The court overruled the defendant's objections and indicated that it would determine the effect of the alleged reconciliation, and the rights of the parties to any community property accumulated during the period following the interlocutory decree.

The plaintiff testified that the defendant contacted her by telephone in Vancouver, British Columbia, where she had moved following the interlocutory decree, in March 1966, and that in April he came to see her. She stated, "He . . . asked me to go back to him, that he needed me and wanted me and loved me. And that if I would come back to him that he would give up all his bad company and his bad habits, and at least he would try, and so then he came back May 15 and we packed up my furniture and brought it back to San Francisco." The plaintiff affirmed that at that time she forgave the defendant's past conduct and all of the problems that occurred between them previously, and that he said he would give up all his bad company. She said that she did not impose any conditions for coming back, and only asked him to be a little kind and not get so flared up with temper. She acknowledged that he gave up his bad company for a little while, but that problems arose practically from the first, following her return.

At the end of 1967 problems arose. The defendant presented the plaintiff with a document dated November 22, 1967, which she signed involuntarily. It acknowledged the receipt of $1,000, which he in fact paid her, and

recited, "Subsequently we attempted to try a conditional reconciliation which proved unsuccessful and we have separated again without abrogating any of the provisions contained in the interlocutory judgment of divorce." The defendant suggested that she go back to Canada for a holiday until " 'we are settled down in our minds.' " They talked it over, however, and decided to get their own apartment, but that attempted reconciliation failed.

The plaintiff returned to Canada on December 15, 1967 leaving a tearful defendant at the airport. He phoned her on Christmas and on New Year's Day, and in May 1968 he came to Canada and made promises that everything was going to work out properly. His past conduct was to be forgotten completely. She returned with him to San Francisco. In August 1968 they took separate living quarters, and on October 20, 1968 the plaintiff filed the new action for divorce, which has been referred to above.

"When parties become reconciled after an interlocutory decree and live together as husband and wife, the right to a final decree is destroyed [citations], and they are entitled to such rights as arise from the legal relation of husband and wife. [Citations.]" (*Estate of Abila, supra,* 32 Cal.2d 559, 561. See also, *Olson* v. *Superior Court, supra,* 175 Cal. 250, 252-253; *Kelley* v. *Kelley* (1969) 272 Cal.App.2d 379, 381 [77 Cal.Rptr. 358]; *Nacht* v. *Nacht* (1959) 167 Cal.App.2d 254, 261 [334 P.2d 275]; *Small* v. *Small* (1954) 123 Cal.App.2d 870, 874-875 [268 P.2d 63]; *Nemer* v. *Nemer* (1953) 117 Cal.App.2d 35, 38 [254 P.2d 661]; *Angell* v. *Angell* (1948) 84 Cal.App.2d 339, 343 [191 P.2d 54]; *Peters* v. *Peters* (1936) 16 Cal.App.2d 383, 386 [60 P.2d 313]; and *Lane* v. *Superior Court* (1930) 104 Cal.App. 340, 348-349 [285 P. 860].)

Where there has been a bona fide unconditional reconciliation, neither party can compel the entry of a final decree. (See, *Olson* v. *Superior Court, supra,* 175 Cal. 250, 252-253; *Nacht* v. *Nacht, supra,* 167 Cal.App.2d 254, 263; *Small* v. *Small, supra,* 123 Cal.App.2d 870, 874-875; *Nemer* v. *Nemer, supra,* 117 Cal.App.2d 35, 38; and *Angell* v. *Angell, supra,* 84 Cal. App.2d 339, 343.) It is proper to set aside the interlocutory decree and dismiss the action (see, *Tompkins* v. *Tompkins* (1962) 202 Cal.App.2d 55, 57 [20 Cal.Rptr. 530]; *Purdy* v. *Purdy* (1956) 138 Cal.App.2d 402, 403 [291 P.2d 1005]; and *Morgan* v. *Morgan* (1951) 106 Cal.App.2d 189, 191 [234 P.2d 782]), and a new action for divorce may be brought upon a cause for divorce arising after the reconciliation (see, *Tompkins* v. *Tompkins, supra,* 202 Cal.App.2d 55, 57; *Purdy* v. *Purdy, supra,* 138 Cal.App.2d 402, 403; and *Lane* v. *Superior Court, supra,* 104 Cal.App. 340, 349).

If one party fraudulently secures a final decree despite such a reconciliation the final decree may be set aside. (*Nelson* v. *Nelson* (1936) 7 Cal.2d 449, 452 [60 P.2d 982].)

■ Nevertheless, "a reconciliation and a resumption of marriage relations are not always the same. A resumption of marital relations does not result in a reconciliation unless or until the parties mutually intend to reunite permanently as husband and wife [citations] and there is an unconditional forgiveness by the prevailing party. [Citation.]" (*Tompkins* v. *Tompkins, supra,* 202 Cal.App.2d 55, 58. See also, *Estate of Abila, supra,* 32 Cal.2d 559, 561; *Kelley* v. *Kelley, supra,* 272 Cal.App.2d 379, 381-382; *Kern* v. *Kern* (1968) 261 Cal.App.2d 325, 331 [67 Cal.Rptr. 802]; *Nacht* v. *Nacht, supra,* 167 Cal.App.2d 254, 261; *Nemer* v. *Nemer, supra,* 117 Cal.App.2d 35, 38; *Angell* v. *Angell, supra,* 84 Cal.App.2d 339, 343; and *Lane* v. *Superior Court, supra,* 104 Cal.App. 340, 346-348.)

■ In the absence of a bona fide unconditional reconciliation it is proper to grant, and an abuse of discretion to deny, a final decree of divorce despite the resumption of some marital relations subsequent to the entry of the interlocutory decree. (See, *Kelley* v. *Kelley, supra,* 272 Cal.App.2d 379, 381; *Kern* v. *Kern, supra,* 261 Cal.App.2d 325, 330-332; and *Angell* v. *Angell, supra,* 84 Cal.App.2d 339, 344-345.)

In the event of the death of one spouse, under such circumstances, the survivor cannot claim rights which are dependent on the existence of an obligation of support from the decedent. (See, *Estate of Abila, supra,* 32 Cal.2d 559, 560-561.)

(6) "Whether an agreement is an unconditional one of forgiveness, and therefore justifies the denial of the final decree, or is a conditional one, and therefore warrants the granting of the final decree, is a question of fact. If the evidence, or the reasonable inferences therefrom, is conflicting, the determination of the question by the trial court, in accordance with elementary principles, is conclusive on the appellate court." (*Angell* v. *Angell, supra,* 84 Cal.App.2d 339, 343. See also, *Kelley* v. *Kelley, supra,* 272 Cal.App.2d 379, 381; *Kern* v. *Kern, supra,* 261 Cal.App.2d 325, 331; *Nacht* v. *Nacht, supra,* 167 Cal.App.2d 254, 261-262; *Small* v. *Small, supra,* 123 Cal.App. 2d 870, 874; *Nemer* v. *Nemer, supra,* 117 Cal.App.2d 35, 38-39; *Peters* v. *Peters, supra,* 16 Cal.App.2d 383, 387; and *Lane* v. *Superior Court, supra,* 104 Cal.App. 340, 345.) The burden of proof in the trial court is upon the party asserting the fact of reconciliation." (*Kelley* v. *Kelley, supra,* 272 Cal. App.2d 379, 381.)

■ In the instant case there was no contest as to whether the reconciliation was conditional or unconditional. The plaintiff, in seeking a final decree, of necessity took the position that there had been no unconditional reconciliation. The defendant was satisfied to have the plaintiff secure a final decree provided he was not saddled with obligations not covered by the interlocutory decree. The court in granting the final decree must be deemed

348

to have found that any resumption of marital relations following the entry of the interlocutory decree was merely conditional. The parties cannot confer jurisdiction to act on the court by consent. (See, *Grant* v. *Superior Court, supra,* 214 Cal.App.2d 15, 20-21.) Nevertheless, the evidence is susceptible of the conclusion that there was no bona fide unconditional reconciliation. The fact that this court might believe that the weight of the evidence points to a contrary conclusion will not, under principles set forth above, permit overruling of the conclusion implied from the action of the court below.

*Alimony*

The prayer for support in plaintiff's declaration, which was echoed in the order to show cause, has been set forth above. In points and authorities submitted to the court after the hearing, plaintiff's attorney requested "that she be awarded $200 per month support for one year, . . ." Since it is concluded that plaintiff was barred from securing any further support in this action, it is unnecessary to determine whether she thereby waived the right to alimony unlimited in time, and thereby rendered erroneous the provision of the final judgment of divorce which purports to order such payments "until further order of . . . court." Nor is it necessary to examine the scanty evidence relating to the needs of the plaintiff and the defendant's ability to pay.[2] (Cf. *Hood* v. *Hood* (1962) 211 Cal.App.2d 332, 340 [27 Cal.Rptr. 47].)

The plaintiff has never taken any steps to set aside the interlocutory judgment. She seeks to avoid the principles set forth above in connection with the discussion of the interlocutory judgment, and to justify the award of alimony on the theory that the period in which the parties lived together after the interlocutory decree was like a new marriage which created and bestowed new rights to the plaintiff. There was, of course, no new marriage. There was either a reconciliation, within the principles discussed above under that heading, which breathed new life into the original marriage that had been adjudged subject to dissolution, or there was no such reconciliation and the plaintiff, having previously established her right to dissolution of the marriage, was entitled to bring that adjudication into final form. Since

[2]At the hearing which lead to the entry of the interlocutory judgment of divorce, the plaintiff testified, in addition to what has been set forth under the discussion of that subject, that she had "certain moneys and property in Canada." At the later hearing she testified that she earned her own living in Canada as a nurse; that she desired to take a year or two year's training to become qualified to make her living as a practical nurse in the United States; and that her health had been affected and she was on medication for high blood pressure, not on account of work, but because of the cruelty of the defendant. Both the plaintiff and the defendant testified with respect to the defendant's earnings, and he testified as to his living expenses, including food purchased for the plaintiff.

she followed the latter course she takes the prior adjudication with its restrictions, as well as with its benefits.

If she had taken the former course, and proceeded with the action she filed in October 1968, she could have shown that a bona fide reconciliation rendered the restrictions in the interlocutory judgment nugatory, and that she was entitled to alimony despite any agreement to the contrary which she might have made prior to or in connection with the entry of that judgment. (See, *Tompkins* v. *Tompkins, supra,* 202 Cal.App.2d 55, 59-63; *Purdy* v. *Purdy, supra,* 138 Cal.App.2d 402, 405; and *Morgan* v. *Morgan, supra,* 106 Cal.App.2d 189, 192-193.) In this case, however, there has never been an adjudication that the acts of defendant subsequent to the entry of the interlocutory decree gave rise to a new cause of action for divorce. It is impossible to speculate as to what provision might have been made for plaintiff in an action to obtain such relief.

The plaintiff's argument confuses the obligation of husband to support a wife with whom he is living (see, Civ. Code, §§ 5100, 5130 and 5131 [former §§ 155, 174 and 175] and § 242), and the obligation for future support following separation and/or divorce which is dependent upon an adjudication in appropriate proceedings (see, Civ. Code, § 4801 [former § 139]). ■ The former principle rendered the defendant, whose marriage had not been finally dissolved, liable for the support of the plaintiff during those periods following the entry of the interlocutory decree during which she resided with him. The conditional resumption of marital relations did not, however, without a proper adjudication, render him liable for support following an ensuing separation.

For the same reason, those cases which have authorized the imposition of an obligation to support upon a spouse in actions other than actions for divorce or separate maintenance are not pertinent or controlling.[3] A court

---

[3]*Hudson* v. *Hudson* (1959) 52 Cal.2d 735 [344 P.2d 295], "a wife may obtain support or alimony following the entry of an ex parte divorce" p. 740; *Grannis* v. *Superior Court* (1904) 143 Cal. 630 [77 P. 647], "to enable her to prosecute her motion to vacate . . ." p. 633; *Galland* v. *Galland* (1896) 38 Cal. 265, "compel an offending husband to provide out of their common property, for the support of an ill-used wife" p. 272; *Catalano* v. *Superior Court* (1966) 239 Cal.App.2d 641 [49 Cal.Rptr. 57], "alimony and suit money pending the outcome of the appeal" p. 644; *Hood* v. *Hood* (1962) 211 Cal.App.2d 332 [27 Cal.Rptr. 47], "award of alimony pendente lite relative to an action to establish a foreign judgment for alimony" p. 336; *Salvato* v. *Salvato* (1961) 195 Cal.App.2d 869 [16 Cal.Rptr. 263], when grounds for divorce exist alimony may be awarded to wife who sought only separate maintenance although divorce awarded husband, p. 872; *Bernard* v. *Bernard* (1947) 79 Cal.App.2d 353 [179 P.2d 625], "an independent action in equity for alimony where no such award was made or could have been made in the interlocutory decree because the court had no jurisdiction, the defendant husband residing out of the state" p. 355.

may have "general equity powers to grant alimony in cases aside from those specifically provided for by statute." (*Hudson* v. *Hudson* (1959) 52 Cal.2d 735, 744 [344 P.2d 295], referring to *Galland* v. *Galland* (1869) 38 Cal. 265.) In exercising this power the court is enforcing "the obligation of a husband or wife to support the other spouse." (See, *Bernard* v. *Bernard* (1947) 79 Cal.App.2d 353, 355 [179 P.2d 625].) The salient question is whether that obligation persists after the entry of a final interlocutory judgment, which has not been set aside, when that judgment adjudicated that no alimony should be payable following the time of its entry. As stated, the conditional resumption of marital relations can do no more than impose an obligation to support during the period the condition is observed and the parties are living together. To permit a second judgment on the issue of future support without setting aside the first is incompatible with the principles first set forth herein. In *Evans* v. *Evans* (1969) 275 Cal.App.2d 423 [79 Cal.Rptr. 862], this court pointed out that a decree for separate maintenance could not continue in effect after the marriage was terminated by a decree of divorce which made no provision for support (275 Cal.App.2d at pp. 425-426). So here, the wife's right of future support on dissolution of the marriage could not survive the final interlocutory judgment.

The trial court erred in providing for alimony in the final decree.

*Costs and Fees*

"When a valid marriage is admitted . . . and the issue before the court is the validity of an ex parte divorce, the trial court may grant the wife temporary alimony, costs, and fees to enable her to attack the ex parte divorce if she demonstrates her need for the award and her husband's ability to pay it. [Citations.]" (*Hudson* v. *Hudson, supra*, 52 Cal.2d 735, 738-739.) Moreover, the trial court has authority to award the wife the attorney's fees and costs necessary to enable her to prosecute or defend her demand for permanent alimony where there is no final adjudication denying her support. (*Hall* v. *Superior Court* (1955) 45 Cal.2d 377, 383 [289 P.2d 431]. See also, Civ. Code, § 4525 [former § 137.3]; *Nelson* v. *Nelson, supra*, 7 Cal.2d 449, 452-453; *Lamborn* v. *Lamborn* (1923) 190 Cal. 794, 795-796 [214 P. 862]; *Grannis* v. *Superior Court, supra*, 143 Cal. 630, 633; *Catalano* v. *Superior Court* (1966) 239 Cal. App.2d 641, 643-644 [49 Cal.Rptr. 57]; *Nacht* v. *Nacht, supra*, 167 Cal. App.2d 254, 268; and *Vishner* v. *Vishner* (1954) 125 Cal.App.2d 667, 669-670 [271 P.2d 68].) *Vishner* v. *Vishner, supra*, indicates that the wife on proper showing would have been entitled to attorney's fees and costs in her second action if she had proceeded to attack the instant proceedings on the theory that there had been a bona fide reconciliation. (125

Cal.App.2d at p. 669; but cf. *Overell* v. *Superior Court, supra,* 29 Cal. App.2d 418, 420.)

On the other hand, where an order has permanently relieved the husband from the alimony obligation, and the order has become final and is not the subject of collateral attack, the court is not authorized to make an allowance for costs and fees. The distinction was noted in *McClure* v. *McClure, supra,* as follows: "Where the divorced husband has not been released permanently from the obligation to pay alimony, the court may allow the wife costs and attorney's fees to prosecute or defend an appeal from an order of modification, either on the theory that such an award is an additional allowance for support made under section 139 of the Civil Code, or on the theory that where the power to modify continues, the action is still pending under section 137 of the Civil Code, which authorizes the court to require the husband to pay money to enable the wife to prosecute or defend the action. [Citation.] But in the instant case, where the order of 1927 permanently relieved the husband from the alimony obligation, and said order had become final, neither section authorized the allowance." (4 Cal.2d at p. 362. See also, *Wilson* v. *Wilson* (1948) 33 Cal.2d 107, 115 [199 P.2d 671]; *Carlson* v. *Carlson supra,* 221 Cal. App.2d 47, 55-56; *Diamond* v. *Diamond* (1957) 149 Cal.App.2d 788, 791-792 [308 P.2d 909]; and *Overell* v. *Superior Court, supra,* 29 Cal. App.2d 418, 420.)

No opinion is expressed as to whether the broad provisions of former section 137.3 (now found in § 4526) of the Civil Code[4] would have authorized an allowance of costs and fees, despite the provisions of the interlocutory decree, if the defendant had contested the plaintiff's right to a final decree. He did not do so, however, he only sought to uphold the provisions of the interlocutory decree, against the new claims of the plaintiff who elected to stand on that decree for a portion of the relief she sought. Under the circumstances, the trial court erred in allowing the plaintiff attorney's fees and costs.

---

[4]Former section 137.3 of the Civil Code provided in part, "During the pendency . . . of any action for divorce . . . the court may order the husband . . . to pay such amount as may be reasonably necessary for the cost of maintaining or defending the action and for attorney's fees if such relief is requested in the complaint . . . ; and from time to time and before entry of judgment, the court may augment or modify the original award, if any, for costs and attorney's fees as may be reasonably necessary for the prosecution or defense of the action or any proceeding relating thereto. In respect to services rendered or costs incurred after the entry of judgment [meaning "interlocutory judgment"], the court may award such costs and attorney's fees as may be reasonably necessary to maintain or defend any subsequent proceeding therein, whether or not such relief was requested in the complaint, cross-complaint or answer, and may thereafter augment or modify any award so made."

## Property Rights

Defendant contends that any property acquired during the period that the parties resumed their marital relationship was his separate property by virtue of the provisions of section 169.2 [now found in § 5119, subd. 6] of the Civil Code.[5] Since the parties were not living separate and apart, the statute is inapplicable.

He further asserts that the evidence was insufficient to show that the parties accumulated any property while the reconciliation was attempted. The plaintiff testified as follows: "Q. Now during the period of time between March 15 of 1966 and October 20, 1968 did you and Mr. Cochran discuss your community property that you had accumulated? A. Yes. Q. What did he state to you was the approximate amount that you had accumulated? A. About $8,000.00." Although the defendant testified in his own behalf he did not deny making that admission, nor did he deny that such a sum had been so accumulated. The admission of a party is sufficient proof of the matter asserted. (Evid. Code, § 1220; Witkin, Cal. Evidence (2d ed. 1966) § 496, p. 467.)

Finally, he contends that the provisions of the interlocutory decree preclude the plaintiff from making any further claim for community property. It is generally true under the authorities first referred to in this opinion "that the trial court is without jurisdiction to modify an unqualified disposition of property rights made in an interlocutory decree of divorce except in accordance with the methods applicable to judgments generally, . . ." (*Leupe* v. *Leupe, supra,* 21 Cal.2d 145, 148. See also, *Estate of Hudspeth, supra,* 225 Cal.App.2d 759, 763-764; *Grant* v. *Superior Court, supra,* 214 Cal.App.2d 15, 22; and *Broome* v. *Broome, supra,* 104 Cal.App.2d 148, 154-155.)

On the other hand, the property in controversy in these proceedings was not in existence at the time of the entry of the interlocutory decree. In *Brown* v. *Brown, supra,* the court concluded, ". . . we think it is clear that the judgment of divorce will not prevent plaintiff from claiming an interest in community property acquired after the beginning of the action and before the final judgment, if there was no issue tendered in that action concerning such property." (170 Cal. at p. 7.) In the absence of an agreement to the contrary or any express provision in the interlocutory decree, the plaintiff was entitled to claim an interest in that property. (See, *Grant* v. *Superior Court, supra,* 214 Cal.App.2d 15, 23; *Franklin* v. *Franklin* (1945) 67 Cal.App.2d 717, 721 [155 P.2d 637]; and *Hiltbrand* v.

[5]Former section 169.2 of the Civil Code provided: "After the rendition of an interlocutory judgment of divorce and while the parties are living separate and apart, the earnings and accumulations of the husband are the separate property of the husband."

*Hiltbrand* (1936) 13 Cal.App.2d 330, 334-335 [56 P.2d 1292].) The plaintiff was not precluded from asserting that claim by the provisions of the interlocutory decree. The court in entering the final decree was authorized to grant "such other and further relief as may be necessary to complete disposition of the action." (Civ. Code, former § 132 [now found in § 4514].)

It is concluded that the court properly provided for the disposition of community property which was acquired after the entry of the interlocutory judgment, in the final judgment of divorce.[6]

The judgment appealed from is modified by deleting therefrom the provisions granting the plaintiff alimony and her attorney's fees and costs, and the judgment as so modified is affirmed. Let each party bear his or her respective costs of appeal.

Molinari, P. J., concurred.

**ELKINGTON, J.**—I respectfully dissent from that portion of the majority opinion which strikes the support and attorney's fee provisions of the final judgment of divorce.

The case concerns the marital rights of a wife who, waiving future support, secured an interlocutory decree of divorce upon grounds of extreme cruelty, and then, upon her husband's insistence gave him another chance and entered upon a *conditional* reconciliation with resumption of marital relations. The majority opinion holds, in effect, that the husband, with or without cause and even wrongfully, may terminate the conditional reconciliation and leave his wife without any means of support, temporary or otherwise. It further holds that a court of equity having jurisdiction over the parties in a pending divorce action is powerless to order otherwise. This in my opinion is not the law, nor is it equity.

It seems proper at this juncture to point out what I believe to be legal and factual errors upon which the majority, at least in part, base their conclusion.

A factor relied upon is "that it had been recommended that [the pending] action be dismissed so that the plaintiff could proceed in the new

---

[6]This conclusion makes it unnecessary to pursue the plaintiff's claim as predicated upon the rights of a purported spouse living under color of a voidable marriage. (See, *Sefton* v. *Sefton* (1955) 45 Cal.2d 872, 875 [291 P.2d 439]; *Schneider* v. *Schneider* (1920) 183 Cal. 335, 341 [191 P. 533, 11 A.L.R. 1386]; *Coats* v. *Coats* (1911) 160 Cal. 671, 678 [118 P. 441]; *Goff* v. *Goff* (1942) 52 Cal.App.2d 23, 30 [125 P.2d 848]; *Santos* v. *Santos* (1939) 32 Cal.App.2d 62, 65-66 [89 P.2d 164]; and *Macchi* v. *La Rocca* (1921) 54 Cal.App. 98, 100 [201 P. 143].)

action [and thus seek alimony]. The plaintiff declined to do so." But it was beyond the power of the plaintiff to so dismiss the action after entry of the interlocutory decree. Civil Code section 131 provided: "After the entry of the interlocutory judgment, neither party shall have the right to dismiss the action without the consent of the other." It is clear from the record that defendant having given no legal grounds for denial of a final decree was not about to consent to the action's dismissal. Since the reconciliation had been *conditional,* as he at all times conceded, he was per-' mitted himself to seek the final decree (Civ. Code, § 132), which under the majority's theory would foreclose any alimony. Indeed, failure to grant him such a decree would have been an abuse of discretion. (See *Kelley* v. *Kelley,* 272 Cal.App.2d 379, 381 [77 Cal.Rptr. 358]; *Kern* v. *Kern,* 261 Cal.App.2d 325, 330-332 [67 Cal.Rptr. 802]; and *Angell* v. *Angell,* 84 Cal.App.2d 339, 344-345 [191 P.2d 54].)

Next is the majority's premise—that since "The plaintiff has never taken any steps to set aside the interlocutory judgment," the alimony award was somehow erroneous. Since the reconciliation was conditional, as found by the trial court, and as conceded by the parties and now by the majority, there were no legal grounds for such a motion. An order setting aside the earlier decree, over the to be expected objection of defendant, would have been certain error.

The majority say: "The plaintiff's argument confuses the obligation of husband to support a wife with whom he is living . . . , and the obligation for future support following separation and/or divorce which is dependent upon an adjudication in appropriate proceedings. . . ." The attempted distinction is without legal justification. It is said in 24 Am.Jur. 2d, page 649 (Divorce and Separation, § 524) that "[A]limony is founded . . . on the natural and legal duty of a husband to support his wife; it is an obligation, the enforcement of which is of such vital concern to the state itself that the law will not permit him to terminate it by his own wrongful act in driving her to seek a legal separation or divorce. . . ." And the editors of that work point out that alimony is not a "debt in the the strict legal sense of that term, but rather a judgment calling for the performance of a [preexisting] duty made specific by the decree of a court of competent jurisdiction." California's courts agree that such is the nature of alimony. In *Hudson* v. *Hudson,* 52 Cal.2d 735, 743-744 [344 P.2d 295], it was said: *"A wife's right to support arises from the marriage and is recognized by statute.* (Civ. Code, § § 155, 174.) *It is not created by a divorce decree; the decree is simply one means of enforcing the right. . . ."* (Italics added.) The court continued: "Defendant contends that our courts can grant alimony only in an action for divorce, on the ground that it is only in such an action that the statutes provide for alimony. This

contention was answered adversely to defendant as early as 1869. In *Galland* v. *Galland*, 38 Cal. 265, a wife sued her husband for alimony without asking for a divorce. The statute contained no provision for alimony save in an action for divorce. The husband contended that the statutes were exclusive and that the court lacked power to grant alimony in any other case. The court held that it had general equity powers to grant alimony in cases aside from those specifically provided for by statute and answered the husband's contention in these words: 'The Legislature was not dealing with the general subject of alimony, as an independent subject-matter of legislation; but only, as one of the incidents of an application for divorce. It saw fit to define the power of the Court over the allowance of alimony on an application for divorce; but was not considering the subject of alimony in any other class of cases. . . . [A] provision for alimony in a suit for divorce is not to be considered as a declaration that alimony shall not be allowed in other actions.' . . ."

We are not assisted to a proper resolution of this case by the majority's notation (fn. 2) that plaintiff had " 'certain moneys and property in Canada' " and for other reasons she might promptly have commenced supporting herself upon the reconciliation's failure. We are here bound by the "substantial evidence" rule. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].) It is conceded that there was substantial evidence supporting the trial court's discretion, if legally permitted, in making the support award. Even if this be a "hard case" (I think not) it should not be the vehicle for creating "bad law."

The pertinent facts of the case before us are simple. After a marriage of less than a year's duration plaintiff, waiving alimony, obtained an interlocutory decree of divorce. Thereafter at her husband's importuning she consented to a conditional reconciliation. The husband thereupon, as the majority concede, reassumed the legal responsibility and duty of supporting his wife. The reconciliation lasted two and a half years, and was ended through no fault (although fault would seem irrelevant) of the wife. Under the law she or the husband was entitled to a final decree of divorce. (Civ. Code, § 132; see also *Kelley* v. *Kelley, supra,* 272 Cal.App.2d 379, 381; *Kern* v. *Kern, supra,* 261 Cal.App.2d 325, 330-332; *Angell* v. *Angell, supra,* 84 Cal.App.2d 339, 344-345.) The reconciliation having been conditional, the wife was not entitled to commence, or continue, another action for divorce, or to dismiss the pending action, or to have the interlocutory decree of divorce set aside. She applied for the only relief available to her, a final divorce decree, and for temporary alimony. In the pending divorce action, "historically equitable in nature" (*Stille* v. *Stille,* 273 Cal. App.2d 665, 666 [78 Cal.Rptr. 442]) and on substantial evidence, the

trial court found her equitably entitled to temporary support and so exercised its discretion.

The majority say: "The salient question is whether that obligation [for plaintiff's support] persists after the entry of a final interlocutory judgment, which has not been set aside, when that judgment adjudicated that no alimony should be payable following the time of its entry," and "the wife's right to future support on dissolution of the marriage could not survive the final interlocutory judgment."

These observations, I believe, are also founded on error for plaintiff's right to support, or lack of such right, is in no way related to, or derived from, the interlocutory decree of divorce. Instead it is founded on an *agreement of the parties,* the conditional reconciliation entered into following the entry of that decree. By that agreement, as conceded by all, defendant reassumed the husband's obligation of support. And by the same agreement the parties mutually rescinded plaintiff's previous waiver of support.

It has been repeatedly held that an *unconditional* reconciliation of the parties even though finally unsuccessful, after a waiver of alimony by the wife and an interlocutory decree awarding no alimony, has the effect of cancelling the waiver and reviving the husband's obligation of support.

In *Tompkins* v. *Tompkins,* 202 Cal.App.2d 55 [20 Cal.Rptr. 530], the superior court's conclusion (at p. 57) that an "agreement waiving alimony had been cancelled by subsequent reconciliation leaving it free to award future support" was affirmed. It was said that "neither party relied upon the waiver of support nor intended either to abide by it or that it should deprive her of marital support thereafter; and plaintiff having regained her marital rights, defendant having exercised his, and both having performed their marital obligations, the obligation of the husband to support his wife was revived." (P. 60.)

In *Purdy* v. *Purdy,* 138 Cal.App.2d 402 [291 P.2d 1005], a wife had waived alimony but following a futile attempt at reconciliation was nevertheless awarded support. Affirming, the appellate court stated (p. 405): "It is evident from the terms of this agreement that the parties were not then contemplating a reconciliation and . . . we cannot say that the trial court erred in drawing the inference that in view of the subsequent reconciliation, there had been no waiver of the rights of second party to future support and attorneys' fees under a different set of circumstances."

In a similar factual situation the court in *Morgan* v. *Morgan,* 106 Cal. App.2d 189, 193 [234 P.2d 782], said: "The crucial question was whether the agreement should be given prospective effect as concerned the claim and the right of Mrs. Morgan to receive support. That is the question

involved on the appeal. Findings were waived. The decree, insofar as it cancels the agreement, rests upon implied findings that the parties understood that Mr. Morgan, in joining in the reconciliation and resumption of marital relations, abandoned his contractual rights of freedom from the obligation of support, and assumed anew the legal obligations of a husband; also that Mrs. Morgan abandoned her right, which was expressly given by the agreement, to live separate and apart from her husband, and assumed and was restored to the customary obligations and rights of a wife. There was ample evidence to sustain such findings. Mrs. Morgan testified she believed the reconciliation to be permanent. Mr. Morgan's declarations and conduct certainly indicated that he shared that belief. Good faith of the parties was to be presumed. *It is scarcely conceivable that a reconciliation with resumption of marital relations such as the one in evidence would have been entered upon under circumstances that would have enabled the husband to refuse to support his wife and to leave her without cause at any time, and without liability or obligation to her as long as the marriage existed, or after it should be terminated by divorce. In the absence of any evidence of her express agreement continuing the freedom of the husband from liability for support it was reasonable to infer that the parties intended to resume a normal married life and the legal obligations that go with it. . . ."* (Italics added.)

But the case before us differs from *Tompkins* v. *Tompkins, Purdy* v. *Purdy,* and *Morgan* v. *Morgan.* In those cases the reconciliation was *unconditional,* not *conditional* as here. And the question before us, the effect of the parties' conditional reconciliation, insofar as we have been able to determine is one of first impression.

The majority's view seems condensable to a holding that, upon a conditional reconciliation following an alimony waiver and a consistent interlocutory decree, the husband's obligation to support his wife is terminable at his will or at least upon the entry of a final decree available to him at his will. I find myself wholly unable to see any reasonable basis for this distinction between conditional and unconditional reconciliations.

Reconciliations, unconditional and conditional, are favored by the law; each tends to continue the marriage relationship intact.

When a husband seeks reconciliation which is granted by the wife upon condition of decent behavior, it seems to me that he simply reassumes "the natural and legal duty of a husband to support his wife." (24 Am. Jur.2d, p. 649, quoted *ante.*) His promise is to live up to the agreed condition, and he expressly or at least impliedly, agrees that he will *thereafter* support his wife. It cannot reasonably be said that his promise, or that implied by law, is to continue that support just so long as he shall choose

to do so. Instead he has again assumed the obligation of any married man to support his wife until ended by death, by agreement, by her desertion, or by a court of law. And as heretofore pointed out (24 Am.Jur.2d, p. 649, quoted *ante; Hudson* v. *Hudson, supra,* 52 Cal.2d 735, 743-744), this duty does not rest on statute, or technicality, or on a narrow concept that it applies only while the parties shall dwell together.

Procedurally, also, the matter before us is of first impression. But it is said that the "absence of a precedent for the giving of relief in a case where it is evident that under general principles of equity relief should be granted is of no consequence and presents no obstacle to the exercise of the jurisdiction of an equity court." (27 Am.Jur.2d, p. 648.) *Mills* v. *Mills,* 147 Cal.App.2d 107, 118 [305 P.2d 61], states: "Equity does not wait on precedent which exactly squares with the facts in controversy, but will adjust itself to those situations where right and justice would be defeated but for its intervention." And "It is a well established principle that once the jurisdiction of a court of equity is invoked, it has the power to pass on all questions raised which affect the parties before it." (*McKeon* v. *Santa Claus of California, Inc.,* 230 Cal.App.2d 359, 364 [41 Cal.Rptr. 43].)

Here, the conditional reconciliation having failed, plaintiff, as previously pointed out, was *entitled* to a final decree of divorce. She was also, as found by the trial court, *entitled* to continued support for a limited period of time. It became the duty of the court to enter judgment accordingly. For as said in *Stille* v. *Stille, supra,* 273 Cal.App.2d 665, 666, "A divorce case is historically equitable in nature and, as it is improper to adjudicate equity cases by piecemeal, the presiding jurist owes a duty not to leave some of the mutual property rights undisposed of. . . ."

Since plaintiff was entitled to the alimony award it follows that the attorney's fee award was also proper.

I would affirm the judgment in its entirety.

Respondent's petition for a hearing by the Supreme Court was denied February 10, 1971.